Marion A. **COOKE**, Appellee,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education, and Welfare, Appellant.

No. 10225.

United States Court of Appeals Fourth Circuit.

Argued March 10, 1966.

Decided Aug. 4, 1966.

Richard S. Salzman, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Kathryn H. Baldwin and Martin Jacobs, Attys., Dept. of Justice, and Milton J. Ferguson, U. S. Atty., on brief), for appellant.

D. Grove Moler, Mullens, W. Va., for appellee.

Before MARVIN JONES, Senior Judge,* Court of Claims, and SOBELOFF and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Circuit Judge:

On December 11, 1961, Marion A. Cooke of Inman, West Virginia, applied for disability insurance benefits under the Social Security Act, 42 U.S.C.A. §§ 416(i), 423 (1958). After a number of administrative proceedings,[1] the Hearing Examiner denied benefits, and the Appeals Council of the administration affirmed. In a petition to review that decision, the District Court held that the medical evidence established Cooke's inability to return to his former work in the coal mines, but remanded the case to the Secretary for further evidence on the question whether there was any other substantial gainful activity within the Inman area which claimant's residual capabilities would permit him to perform. On this appeal, the Secretary does not dispute the District Court's finding that claimant is unable to work in the coal mines, but argues that the Hearing Examiner's decision should have been affirmed on the basis of his finding that Cooke was capable of doing other work. On a review of the entire record, we conclude that the claimant has plainly demonstrated his right to benefits, and that he is entitled to judgment in his favor.

The medical evidence shows that since 1957 plaintiff has suffered from a steadily degenerating back condition, caused by an injury suffered in the mines. As early as 1958, a physician for the West Virginia Compensation Board recommended that he be given a 29% permanent partial disability award, and later doctors' reports show that his condition

---

* Sitting by designation of the Chief Justice.

1. Cooke first applied for disability benefits in November, 1960, which were denied. No review was sought. The second claim, filed in November, 1961, was also denied, but claimant appealed. In September of 1963—nearly two years after the application—the Appeals Council finally denied his request for review, and Cooke brought an action for judicial review in the District Court. This was remanded at the Secretary's request for further hearings, and benefits were once again denied on July 31, 1964.

has continuously worsened. The trouble was originally diagnosed in 1957 as simple muscle spasms, then in 1958 as a degenerated lumbar disc, and by 1959 it was described as a "major medical impairment." By 1962, his right leg had become ¾ inch shorter than his left, and in 1963 the trouble was characterized as a "chronic lumbosacral derangement, chronic lumbar strain, and lumbar arthritis." All the doctors who examined plaintiff recommended that he refrain from any heavy lifting, bending or stooping.

At the date of the Hearing Examiner's report, Cooke was married and had six children, five of them under eighteen. He was born in 1924 and completed eight grades of grammar school before going to work in 1942 on a supply crew in the coal mines. Between 1943 and 1947 he held various unskilled jobs, including work as a hydraulic press operator, removing and installing heavy railroad engines, and laying pipe. From 1947 until his injury ten years later, he worked in the coal mines near his home, primarily as a brakeman. His injury occurred while handling large steel rails with a crew of other men. None of these occupations required any particular education, training, or skills.

After his injury in August of 1957, Cooke returned to work for about a month, but was forced to leave when the pain in his back became too severe. In February of 1959, he was referred to the West Virginia Rehabilitation Division to determine a job classification for which his residual capabilities might permit retraining. The vocational counselor assigned to his case reported that Cooke was "highly motivated and deeply sincere in his efforts to become rehabilitated." However, despite numerous counseling interviews over a period of five years, the Rehabilitation Division was unable to find alternative employment for which claimant was suited. In March of 1964, the counselor reported that it was "extremely difficult to determine a suitable job objective and particularly difficult in the case of Mr. Cooke due to the extent

of his disability and his educational limitations." Consequently, the effort was abandoned.

In the face of this concrete finding by the state agency charged with determining whether the injured worker could be retrained for other employment—a pragmatic judgment based on five years of association with this claimant—the Hearing Examiner relied instead on the more general testimony of Dr. Harry G. Canon, a PhD in vocational counseling at the Virginia Polytechnic Institute in Blacksburg, Virginia. Basing his testimony on a review of the claimant's medical records and his demeanor at the hearing, Dr. Canon stated that there were a number of jobs which Cooke was capable of performing. Among others, he listed egg candler, bottle inspector, sausage grader, and electric truck operator. Although he referred to the Dictionary of Occupational Titles, Dr. Canon said that from his personal knowledge he knew these jobs were performed within a 150 mile radius of Inman.

 We agree with the District Court that the Hearing Examiner's finding on the availability of other substantial gainful activity, based on Dr. Canon's testimony, was not substantially grounded. In Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966), we pointed out that

> "[e]very type of labor—and every individual laborer—has a practical mobility, a market in which this type of labor and this particular individual may realistically be expected to offer his services, and we think the Secretary should be required to show that types of work within the background and residual capacities of the claimant exist within this area. The relevant geographic area depends on the circumstances of the particular case." Id. at 294.

The area within a 150 mile radius of Inman, in which Dr. Canon testified jobs were available to Cooke encompasses not only the entire state of West Virginia but extends as well to Cincinnati, Ohio; Lex-

ington, Kentucky; Knoxville, Tennessee; Charlotte, North Carolina; and an area of Virginia east of Charlottesville. It is a wholly impractical proposal to require a man with Cooke's background and impairments to range 150 miles from his home in search of a job which at best would hardly pay enough to justify the major expense of moving his home, his wife, and his five children. The equally undesirable alternative would be a commuting plan requiring daily travel to and from work for a maximum distance as great as 300 miles. Obviously the 150 mile radius is an unacceptable geographic standard of availability in this case. Gardner v. Stewart, 361 F.2d 827 (4th Cir. 1966).

 Moreover, although such jobs might *exist* in that area, this is not to say that they are *"available"* to a man in Cooke's condition. It is a matter of common knowledge that employers are hesitant to hire the handicapped, particularly if they have no special skills. The prospective employer's fear of absenteeism, the possibility of higher workmen's compensation premiums, and uncertainty whether such an employee will be able to perform his work satisfactorily, are factors militating against the abstract judgment that jobs are available to this man. Quite correctly the District Court held that the government's evidence, viewed in light of the record as a whole, was insufficient to sustain the Secretary's finding. Gardner v. Stewart, supra. See Wimmer v. Celebrezze, supra; Hall v. Celebrezze, 347 F.2d 937 (4th Cir. 1965); Massey v. Celebrezze, 345 F.2d 146 (6th Cir. 1965); Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965).[2]

However, we see no useful purpose in remanding the case once more to the Secretary. Cooke has already spent five fruitless years in consultation with the West Virginia Rehabilitation Division in

search of a job classification and it is clear from the vocational counselor's report that his disability and limited education—not any lack of motivation—are the chief obstacles to retraining him for a new job. No theoretical job availability that might be adduced at still another hearing can disestablish the verdict of the Rehabilitation Division after five years of probing, that *this* claimant's injury has effectively precluded *him* from engaging in any substantial gainful activities. Over eight years have elapsed since Cooke was forced to abandon his job. His claim for insurance benefits is well into its fifth year of litigation, and we think the District Court should now enter judgment for the plaintiff.

Modified and remanded for entry of final judgment.

---

2. These cases hold that in determining whether there are other jobs "generally available in the economy," the Secretary may not rely on abstract job classifications, but must show that employment is available to the· particular claimant

within a reasonable geographic proximity of his home, depending on his age, education, work experience and the extent of his disabilities. Compare Simmons v. Celebrezze, 362 F.2d 753 (4th Cir. 1966).