**Emanuel R. HILTON, Appellee,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Appellant.**

**No. 10254.**

United States Court of Appeals
Fourth Circuit.

Argued March 7, 1966.

Decided Oct. 4, 1966.

Howard J. Kashner, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Kathryn H. Baldwin, Atty., Dept. of Justice, and Thomas B. Mason, U. S. Atty., on the brief), for appellant.

Glen M. Williams, Jonesville, Va. (Birg E. Sergent, Pennington Gap, Va., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Circuit Judge, and CRAVEN, District Judge.

BOREMAN, Circuit Judge:

The Secretary of Health, Education, and Welfare denied Emanuel R. Hilton's application, filed with the Social Security Administration on October 16, 1962, to establish a period of disability and for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423 (Supp.1965). On petition for review the District Court overturned the Secretary's ruling and entered summary judgment for the claimant. The Secretary appeals.

Hilton, who lives at Pennington Gap, a small community in Lee County, Virginia, filed his application when he was forty-one years old. Establishment of eligibility for benefits requires a determination that he became disabled on or before September 30, 1959, that being the last day on which he met the special earnings requirement of the Act and the date of the expiration of his insured status. See 42 U.S.C.A. § 423(a) (1) (A) (1964).

Claimant has spent most of his working life in some phase of coal mining. He has also farmed, driven a truck, and operated a milling machine in a Detroit automobile factory. He last worked at operating a coal mine which he had leased and he employed three or four persons in this venture. He asserts that he stopped working in the early part of 1959 because of severe lung difficulties.

The medical evidence established that Hilton had advanced pulmonary tuberculosis which necessitated the removal of part of his right lung in May of 1953. While his tuberculosis has been inactive since surgery, the Secretary found that he is presently afflicted with emphysema, bronchial asthma, and pulmonary fibrosis. Claimant's evidence indicates that he has shortness of breath and lengthy coughing spells, and that he occasionally blacks out as a result of his pulmonary impairments. It is conceded that his ailments adversely affect his ability to work and definitely preclude him from returning to his former work as a coal miner. However, the Secretary found that he has a residual capacity to perform work which does not involve heavy physical labor or exposure to dust and which requires little education or training. We think this finding, standing alone, has adequate record support but it is not dispositive of the issues here as will later appear.

There is medical evidence in the record that claimant's pulmonary function actually improved rather than deteriorated during the years following his lung operation. On July 17, 1952, which was prior to his operation, an examination by Dr. R. C. Kimbrough, Jr., revealed that Hilton's vital capacity [1] was 73% of normal. On February 23, 1954, following the operation, Dr. Kimbrough again examined claimant and found him to have 75% of normal vital capacity. Dr. William F. Schmidt reported, on the basis of a February 3, 1961, examination, that claimant's vital capacity was 76% normal. Dr. Schmidt stated in his report that "His [Hilton's] respiratory symptoms have been minimal and he has regained his exertional tolerance markedly. * * * I feel this gentleman has made a nice improvement in his functional ability." A Veterans Administration report of a medical examination of claimant on October 15, 1962, fixed his vital capacity as 81% normal.

Dr. Schmidt, who examined claimant on two separate occasions, apparently was the only witness who stated a medical opinion as to claimant's physical capacity to work. In a report dated August 27, 1959, Dr. Schmidt stated that Hilton could not perform any arduous labor or any type of "timed expected quantitative work for an allotted period of time," and that he should not be exposed to dust in the mines. However, he concluded that Hilton would be a "good candidate for rehabilitation since he has done work on a

drill press, and also expresses some interest in bookkeeping and electrical work." In his report of February 3, 1961, Dr. Schmidt stated, "I suggest he be gradually progressed to full activity and considered for rehabilitation of some sort."

Hilton's schooling terminated with the sixth grade. He is able to read and write. There was a conflict in the testimony concerning his "native" mental ability. Certain evidence indicates that his mental aptitude is much greater than his education would indicate. Claimant's attorney concedes that he formerly impressed people with his intelligence, but contends that his physical ailments have dulled his mind over the years. The Secretary resolved this conflict against the claimant, finding that he has a "large amount of native ability beyond his formal education."

The foregoing evidence affords a reasonable basis for concluding that Hilton possesses a residual capacity to engage in some type of substantial gainful employment.[2] However, we have repeatedly held that where a claimant is unable to return to his former work because of his physical or mental afflictions, the Secretary cannot deny disability benefits unless he finds, on the basis of substantial evidence, that there is some particular type of work which claimant can still perform, and that such work is available to him within the geographic area where he may reasonably be expected to market his labor. See, e. g. Hall v. Celebrezze, 347 F.2d 937 (4 Cir. 1965).[3]

---

1. Vital capacity is the number of cubic inches of air a person can forcibly expire after a full inspiration. Dorland's Illustrated Medical Dictionary 225 (23d ed. W. B. Saunders Co. 1957).

2. A claimant is disabled within the meaning of §§ 216(i) and 223 only if he is unable

   " * * * to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C.A. §§ 416(i) (1) (A) ; 423(c) (2) (A) (Supp.1965). (Emphasis added.)

3. The Secretary persists in asking that we reverse our position heretofore announced, to the effect that a person is disabled if, in view of his physical or mental limitations, there is no job which he is able to perform that is available in the geographic area in which he may reasonably be expected to market his labor. As in other recent cases where such a request was made, see, e. g., Wimmer v. Celebrezze, 355 F.2d 289 (4 Cir. 1966), we are not persuaded that we should overrule our prior holdings on this point.

A vocational expert, Dr. Ralph E. Dunford, testified that, in his opinion, Hilton should be able to do light work which does not require heavy lifting or excessive movement. He specified the assembly of minor electrical instruments or appliances as a particular job which Hilton could perform and stated that jobs as an "assembler" were available in the eastern part of Tennessee, in Knoxville and the "tri-cities" area, which is comprised of Bristol, Kingsport and Johnson City.[4]

The record does not reveal the distance between Pennington Gap and these cities or the time required to travel between them. The Secretary notes in his decision that claimant drove himself *sixty* miles to the hearing, which was held in Bristol, Virginia, a city which adjoins Bristol, Tennessee. At the oral argument, the Secretary's representative stated that, measured in straight line fashion, Kingsport was thirty miles from Pennington Gap and that Bristol and Johnson City were fifty miles away. Claimant placed the actual road distance at ninety miles to both Bristol and Johnson City and seventy or seventy-five miles to Kingsport. Whatever the true distances may be, Knoxville is somewhat farther from Pennington Gap than any of the "tri-cities."

■ The District Court reversed the Secretary's denial of benefits because "there is no evidence of any gainful activity available in Lee County which this claimant could perform." In this aspect of the case we think that the District Judge was unduly restrictive. County lines do not provide a feasible guide in determining the area in which claimant may be expected to find available work. Counties may and do vary vastly in size and, depending upon his location within the county, an individual may very well be closer to employment in other counties than to jobs at a distant point in his own county.

4. Dr. Dunford also stated that Hilton could be a parking lot attendant. However, he expressed doubt as to the availability of such work to claimant in the Pennington Gap area and there was evidence that claimant's lung condition could

In Wimmer v. Celebrezze, 355 F.2d 289 (4 Cir. 1966), this court stated:

"Every type of labor—and every individual laborer—has a practical mobility, a market in which this type of labor and this particular individual may realistically be expected to offer his services * * *. The relevant geographic area depends on the circumstances of the particular case." 355 F.2d at 294.

It is true that we affirmed the District Judge's reversal of the Secretary's denial of benefits in *Wimmer* even though he grounded his reversal upon the lack of sedentary jobs in *Giles County*, Virginia. However, in that case this court was careful to negative any idea that the boundary lines of an individual's home county determine the limits of the labor market in which he may be expected to seek employment:

"* * * Its [the District Court's] remarks with respect to Giles County and home community were only a shorthand way of saying that if as a practical matter work was not available to this particular individual within a reasonably accessible labor market, then the record could not support the administrative finding that work was available to him in the general economy. On this interpretation we uphold the judgment." Ibid.

■ In the instant case, even if we regard the District Court's statement with respect to Lee County as being only a "shorthand way" of saying that there are no reasonably accessible jobs which claimant can perform, we disagree with its presumed conclusion that the assembly jobs which the Secretary found Hilton can do are unreasonably distant from him. Claimant's home is in a heavily depressed region. The tri-cities area is the closest point where there is substantial industrial activity. It is the area in

not tolerate the cold air to which he might seasonally be exposed in such work. The only job which the Secretary found that Hilton could perform was that of an "assembler."

which an unemployed resident of Pennington Gap would naturally seek employment. We do not think that the distance to that area, whatever it may be within the ranges given by the parties, is so great, nor that claimant's impairments are so severe, that it would be unreasonable to expect him to seek employment in that area.

■ Nevertheless, we are unable to reinstate the Secretary's decision since it does not appear to have been satisfactorily shown that there is any *type* of work in the tri-cities area which Hilton can do. This failure of proof results from what appears to be a conflict in the evidence, a conflict which should be resolved.

■ The Secretary accepted the testimony of Dr. Dunford, the vocational expert, that Hilton could perform light "assembly" work. However, Dr. Dunford, himself, stated that such work would be on an assembly line basis, and the report of Dr. Schmidt, who is apparently the only medical witness to have expressed a view as to claimant's ability to work, seemingly rules out work on an assembly line. As previously noted, it was Dr. Schmidt's conclusion that Hilton could not perform "any type of timed expected quantitative work for an allotted period of time." Thus, the work suggested by the vocational expert as being *within* Hilton's capabilities was apparently thought to be *beyond* his capabilities by the only expert medical opinion adduced on the point.

The Secretary did not discuss this divergence of opinions and to regard this failure as a clear indication of intention to resolve it in favor of the vocational expert's testimony would be unwarranted. In light of the unreconciled conflict, and its importance, we are unable to say that the Secretary's finding that there are jobs available which the claimant can do is supported by substantial evidence on the record as a whole.

■ Normally, such a conclusion would lead to an affirmance of the District Court's decision that claimant is entitled to the benefits which he seeks. However, we think the appropriate course of action in this case is to remand it to the Secretary for further inquiry into the availability of work *which claimant can do* within the geographic area where claimant may reasonably be expected to market his labor. We base this result upon the seeming potential of Hilton to perform some type of light work[5] and the rather superficial and ambiguous nature of the vocational expert's testimony. While Dr. Dunford did affirmatively indicate, at the inception of his testimony, that the assembly work which he had in mind for claimant would be on an assembly line basis, he went on to suggest, as within claimant's capacity, certain types of very simple assembly work, such as the assembly of percolators, waffle irons and toasters, which would seem far more suited to individual bench work assembly than continuous assembly line construction. While claimant might be expected to do a prescribed minimum within a given period of time on bench work assembly, his ailments and possible work interruptions resulting therefrom would not jeopardize or interrupt the entire manufacturing process as they perhaps would on an assembly line. The report of Dr. Schmidt does not necessarily indicate that claimant could not perform a job at which beyond a possibly required minimum, he could work at his own rate of speed.

We think the possibility that jobs which claimant can do are available within a reasonable area is sufficiently strong that the Secretary should make a further and more exact inquiry and finding in that respect. To that end we va-

---

5. However, the Secretary should, on remand consider the effect of Dr. Dunford's record admissions on cross-examination that claimant's ailments would place him at a tremendous disadvantage in obtaining work in an industrial plant. In this connection, see Williams v. Celebrezze, 359 F.2d 950, 952 and n. 1 (4 Cir. 1966); Cooke v. Celebrezze, 365 F.2d 425 (4 Cir. August 3, 1966).

cate the decision of the District Court and remand the case to it with directions that the case be remanded to the Secretary.

Vacated and remanded.