**Stanford MULLINS**

v.

**John W. GARDNER, Secretary of Health, Education & Welfare.**

**No. 66–C–28–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 14, 1967.

Robert T. Winston, Kime, Jolly & Winston, Salem, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

MICHIE, District Judge.

Claimant seeks review in this court, pursuant to 42 U.S.C. § 405(g), of a final decision of the Secretary of Health, Education and Welfare rendered on January 28, 1966 holding that the claimant was not entitled to any period of disability or disability insurance benefits on the basis of his application filed July 27, 1964. I have concluded that the decision of the Secretary must be affirmed.

Claimant is 53 years of age, is married and has three dependent children. He completed only the fifth grade in school, and had worked in the coal mines in southwestern Virginia for eighteen years before being laid off in 1960. The mines in which he last worked appear to have been located in the area of Clinchco, Virginia, approximately thirty-two miles from his present home in Castlewood, Virginia. In 1959 claimant suffered a serious spinal fracture in a mine accident and, although he returned to work in 1960, he was laid off shortly thereafter.

Claimant appears to have worked for a brief period in Arlington, Virginia, during 1961. This employment consisted of doing light work and cleaning up around construction sites. After returning to his home in Castlewood he worked for a farmer for a short time, doing some rather strenuous work such as grubbing and cutting weeds with a scythe. In 1963 he returned to Arlington where he worked until December of that year for his former employer doing the same type of work as he had done before. He alleges that he left this job because it was cold around the construction sites and because his back was bothering him. More recently he appears to have done some work around a country store, including waiting on customers and putting away canned food and other merchandise for which he received groceries as compensation.

Claimant's difficulties apparently began with his back injury in 1959. He claims that as a result of this injury he suffers back pain with some limitation of movement, as a result of which he is precluded from doing work which requires stooping, bending or heavy lifting. Sometime between 1960 and 1962 claimant developed asthma and shortness of breath. He also claims to have piercing pains in his upper chest. This condition, he claims, makes prolonged exertion impossible.

The Secretary considered claimant's case under both the pre-1965 and the present standards and concluded that under either claimant was not disabled so as to qualify him for disability benefits. This conclusion is not to be disturbed if supported by substantial evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).

While the record is replete with evidence which supports the Secretary's conclusion, I find particularly confirm-

ing the comments in the respective medical reports of Dr. William F. Schmidt who examined claimant in 1962, 1963 and 1964. The 1962 report set out as impressions: "1) Old compression fracture of T–12 with traumatic osteoarthritis of the dorsolumbar spine and minimal limitation, 2) Chronic suppurative bronchitis, recurrent, 3) Pulmonary fibrosis and Emphysema Class I". The comments read:

> This man has had a fractured back and has in addition traumatic osteoarthritis with minimal limitation of the dorso-lumbar spine and the larger joints. I suggest use of salicylates, physio-therapy and analgesia.
>
>   \*   \*   \*   \*   \*   \*
>
> \* \* \* At this time he shows a good response to bronchodilator drugs.

The 1963 report contains a rather extensive and illuminating comment. It reads:

> Since the last examination this gentleman has showed essentially no change. His bronchospasm can be nicely helped with bronchodilator medication. His x-ray showed areas of linear fibrosis, multiple and an occasional area of discrete nodulation, suggestive of an early silicosis. Could not place this at this time as a second stage silicosis and this man does not show any marked limitation of his respiratory function at this time. At the patient's expense, repeat studies were done of his pulmonary function since he was using this report for litigation purposes and it actually showed a slight increase over the previous study. Studies for tuberculosis are underway and smears are negative. Feel there is no superimposed tuberculosis active at this time.
>
> His joints ache and pain but there is no demonstrable limitation on this examination. His major problem of feet hurting and aching, I feel are secondary to painful calluses. Suggest special care by podiatrist.
>
> In view of this gentleman's age of 49, suggest he be referred for vocational rehabilitation and rejob training. His wheezing and asthmatic symptoms can be nicely handled by bronchodilator drugs. Suggest during any periods of infection he be promptly treated.
>
> At this time I am unable to demonstrate any marked limitation by his back injury but would defer to orthopedic surgery consultation.

The last examination by Dr. Schmidt indicates that claimant's condition at that time was essentially the same as before. Dr. Schmidt made the additional note that claimant was not at that time undergoing therapy and that no diagnosis of cardiac disease could be made.

The Secretary properly did not rely on this evidence alone, but in a carefully reasoned decision evaluated claimant's case in the manner required by Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

However, the evidence does establish, and the government concedes in its brief, that claimant is under a partial disability and cannot return to his former work in or around the mines. Dr. Schmidt states in his report of January 8, 1963:

> In view of this gentleman's x-ray findings of very early anthracosilicosis, his bronchospasm and infection prone status, suggest this gentleman avoid returning to mining or any area where there are noxious dusts.

Upon the finding of a partial disability which precluded the claimant from returning to his former work, it became necessary for the Secretary to show the existence of jobs that a person of claimant's original and residual capacity could perform within the geographic area in which he could reasonably be expected to market his labor. Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966), Gardner v. Earnest, No. 10,-536, 371 F.2d 606 (4th Cir. January 10, 1967).

While it is necessary that the Secretary show the existence of jobs within a reasonable distance of claimant's home which he is able to perform,

it is not necessary that the Secretary demonstrate the existence of a job opening immediately available to claimant. To allow such a requirement would be to make of this part of the Social Security Act an Unemployment Compensation Act and would be tantamount to compensating claimant for his failure to be employed rather than for having a disability which prevents him from engaging in gainful activity. The distinction is emphasized by the language used in Wimmer v. Celebrezze, supra. There the Court of Appeals developed the concept of a geographic area in which the claimant might reasonably be expected to *market* his labor, indicating that the Secretary must only establish that jobs of the type claimant can perform exist within the daily traveling distance of his home reasonably permitted by his residual capacity.[1]

■ At the hearing before the Hearing Examiner, counsel for claimant directed several questions to the vocational expert designed to determine whether jobs that claimant could perform existed within the boundaries of Russell County. That county lines usually will not be the bounds of the "relevant geographic area" was confirmed in the recent case of Hilton v. Celebrezze, 367 F.2d 481 (4th Cir. 1966). And so, in the case at bar, because of claimant's rather high residual capacity and the proximity of Bristol, Virginia, and Kingsport, Tennessee, each about forty to forty-five miles from claimant's home, I feel that the labor market in this case can not be restricted to the bounds of Russell County.

Recent medical evidence indicates a minimum of residual deformity and very little limitation of movement resulting from the 1959 spinal fracture. The medical reports do establish that claimant has the early stages of emphysema and there is some evidence of silicosis. However, there was not sufficient evidence of silicosis to allow compensation to claimant on this ground by the Virginia Workmen's Compensation Commission. Although claimant does have a shortness of breath and coughs rather frequently, his wheezing and coughing can be controlled by medication. The slight degree of emphysema present has not significantly impaired claimant's breathing capacity. Medical examinations noted previously which were taken over the period of three years show that claimant's physical condition has not deteriorated. Furthermore, the construction company in Arlington for whom claimant worked as recently as December 1963 was unaware that his health was impaired. Along with this medical evidence, of course, must be considered the facts that claimant is 53 years of age, has little education, and, because of his having spent the majority of his working life in the mines, has few transferable skills.

■■ The Hearing Examiner fairly concluded that the claimant must avoid jobs where there is the presence of noxious dusts and jobs which require a great deal of exertion or bending and stooping. However, where, as here, claimant's normal mobility is not significantly decreased and where medical attention can control or improve claimant's condition, the burden upon the Secretary to demonstrate the existence of jobs within a defined geographic area should not be so great. In short, not only should a higher residual capacity expand the relevant geographic area, but also, by virtue of an implicit assumption of employability, a higher residual capacity should necessitate less evidence of jobs within that area that the claimant can perform.

To establish the existence of jobs which claimant could perform, the Secretary called upon Dr. Carroll Smith, a vocational expert employed by the Department of Health, Education and Welfare. Dr. Smith testified that numerous jobs which involved light work and were

---

1. See also Gardner v. Earnest, supra, where the court set forth the test as: "whether there is a reasonably firm basis for thinking that this particular claimant can obtain a job within a reasonably circumscribed labor market."

relatively dust-free existed within a reasonable distance from claimant's home. Among such jobs he listed bottle inspector in the soft drink industry, crate repairman in the bottling industry, presser-feeder in the work clothes manufacturing industry, and loom oiler in the textile industry. Although Dr. Smith was of the opinion that these jobs were available within Russell County, he could not point to definite establishments. However, there is positive evidence that such jobs do exist in Bristol, Virginia, and Kingsport, Tennessee, both, as noted previously, about forty to forty-five miles distant from claimant's home. The precise issue then is whether claimant should be expected to market his labor in the Bristol and Kingsport area.

When the Court of Appeals in Wimmer v. Celebrezze, supra, established the principle that there is a relevant geographic area in which every claimant may reasonably be expected to market his labor, it also indicated that the extent of this area must be determined on a case by case basis. Wimmer, and subsequent cases on this point [2], have articulated some of the factors which must be considered in determining the distance a claimant may reasonably be expected to travel from home in search of work. The education, prior work experience and type of skills possessed are to be considered along with the claimant's age and the seriousness of his disability. The availability of interstate highways may enlarge the relevant geographic area, Bells v. Celebrezze, 360 F.2d 601 (4th Cir. 1966), and, where the only jobs available are in an urban industrialized area, evidence of a claimant's predominantly rural background may diminish it. Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966).

Claimant has demonstrated his mobility by traveling to and working for a considerable time in Arlington, Virginia.

Even if many of the jobs closer to claimant's home which were mentioned by Dr. Smith are unavailable to claimant, it seems quite reasonable, in view of his relatively high residual capacity, that he should be expected to market his labor in Bristol or Kingsport. Although I am aware of the difficulty in traveling over this mountainous section of Virginia, I note that fifteen miles of the trip to Bristol would be on an interstate highway and thirteen of the remaining twenty-eight on what appears to be a "good" paved road.

2. Williams v. Celebrezze, 359 F.2d 950 (4 Cir., 1966); Bells v. Celebrezze, 360 F.2d 601 (4 Cir., 1966); Gardner v. Stewart, 361 F.2d 827 (4 Cir., 1966); Cooke v. Celebrezze, 365 F.2d 425 (4 Cir., 1966); Hilton v. Celebrezze, 367 F.2d 481 (4 Cir., 1966); Gardner v. Earnest, No. 10,536, 371 F.2d 606 (4th Cir. January 10, 1967).