**Bennie HAMILTON, Plaintiff,**

**v.**

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 884.**

United States District Court
S. D. West Virginia,
Bluefield Division.

March 1, 1967.

19.  19 U.S.C. § 81b(a), see also 15 C.F.R. 400.500.

20.  15 C.F.R. 400.603.

J. N. Harman, III, Welch, W. Va., for plaintiff.

Milton J. Ferguson, U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on November 8, 1966, became the final decision of the Secretary on November 30, 1966, when the Appeals Council adopted it. The final decision holds that, on the basis of his application filed October 8, 1963, the plaintiff is not entitled to a period of disability or disability insurance benefits under the provisions of the Act prior or subsequent to the 1965 Amendments.[1]

■ Plaintiff last met the Act's special earnings requirements as of June 30, 1963. Under the Act, 42 U.S.C.A. 416(i), an individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. Thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to June 30, 1963, when he last met the insured status, though it need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the courts are not to try the case de novo, and if the findings of the Secretary are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the courts should surrender their "traditional function," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see to it that the administrative agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The

1. Section 303(a) of Public Law 89–97 (the 1965 Social Security Amendments) amends the meaning of the term "disability" as found in 42 U.S.C.A. § 423 as follows: "(I)nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Previously, the physical or mental impairment had to " * * * be expected to result in death or to be of long-continued and indefinite duration."

Under the provisions of Section 303(f) of the law a period of disability may be established by use of this amended definition. However, benefits would only be payable beginning in September of 1965 or the seventh month in which an individual has been determined to be under a disability under the amended test, whichever is later.

Fourth Circuit has pointed out that if there is only a slight preponderance of evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court is to determine whether the defendant's denial of the plaintiff's claim is supported by substantial evidence.

█ In his application for benefits plaintiff alleged the onset of his disability as May 1961 because of back and pelvis injuries and a nervous condition. The Secretary denied his request and he sought judicial review in this court. By order dated July 15, 1965, the matter was remanded to the Secretary for further evidentiary development with regard to the existence in the local economy of jobs plaintiff retained the capacity to perform and whether employers would hire him with his restricted capacity. We recognize that the Secretary need not show that an employer will hire a particular claimant, rather only that employers will hire individuals similarly handicapped. Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966). Insofar as our prior directions exceeded the Secretary's burden, they will, of course, be disregarded.

Supplemental hearings were held on June 28, 1966, and October 19, 1966. The Secretary's decision was adverse to plaintiff and the matter is again before us for review.

Plaintiff was born July 17, 1932 in Pikeville, Kentucky. After about seven years he moved to Bartley, McDowell County, West Virginia, where he continues to reside. He is married and has six children. He and his family live on a four-acre farm on which they keep one cow. Plaintiff completed the tenth grade in school, receiving vocational training in electricity, drafting and welding. He also had approximately eighteen weeks working on automobiles. His work experience, with the exception of six or seven months in sawmilling, has been in mining where he performed a number of jobs. He also attempted to do some truck mining with a brother-in-law but this was terminated after two or three months. On May 24, 1961, he was injured in a slate fall that fractured his pelvis and lower back. As a result of this injury, he has received a total permanent disability award from the Workmen's Compensation Fund.

The medical reports in both the original and supplemental transcripts are numerous. In order to avoid undue repetition they will be summarized insofar as possible.

The earliest reports concern examination and treatment at Grace Hospital, Welch, West Virginia, in July 1959. Plaintiff was believed to be suffering from a possible duodenal ulcer. X-rays, however, were essentially negative. The diagnosis remained possible duodenal ulcer and gastritis. During this same period a hemorrhoidectomy was performed. This was his second operation of this nature and he claims that the condition still bothers him.

On May 24, 1961, plaintiff was hospitalized with multiple fractures of the pelvis and dorso-lumbosacral spine. The left transverse process of L-3 and 4 were fractured with mild displacement. There was a fracture of the pelvis, right ilium and acetabulum through the left ischiopubic branch. X-rays of the right foot and ankle revealed what appeared to be an old healed fracture. Plaintiff was treated with traction of the legs and bed rest and allowed to go home on June 16, 1961, with directions to return for a follow-up.

On January 18, 1961, in a letter to the Workmen's Compensation Fund, Dr. Jorge Ribeiro stated that, following his discharge from the hospital, plaintiff had been seen on 7-7-61, 8-7-61, 8-21-61, 8-24-61, 8-30-61, 11-6-61 and 12-18-61. He was described as much improved but still disabled and he complained of low back pain aggravated by bending. Dr. Ribeiro stated that they would do their best to send plaintiff back to work, otherwise he would be referred for disability examination.

Dr. Ray E. Burger, in a May 5, 1962 letter to the Workmen's Compensation Fund, stated that a recent examination revealed about ¾ inch shortening of plaintiff's right leg and that he had been instructed to wear a built-up heel. It was believed that he had reached his maximum degree of improvement.

Plaintiff was admitted to Grace Hospital May 15, 1962, suffering from subacute pyelonephritis. He was given a cystoscopic examination and retrograde pyelograms, treated with urinary antiseptics, bedrest and fluids. He responded well and was allowed to go home May 20, 1962 free of pain; urine clear.

Dr. J. Hunter Smith examined plaintiff on June 20, 1962 for Workmen's Compensation evaluation. He found the right leg shorter and a pelvic tilt with the right side being lower. There was a palpable deformity in the brim of the right ilium and very mild diminution of sensation in the lateral aspect to the right thigh and lower leg. Straight leg raising and Lasegue test were negative. There was normal flexion of the hips and normal motion of the pelvis. The pelvis was not tender on palpation. Patrick's test was negative bilaterally. There was no muscle spasm or tenderness in the posterior aspect of the pelvis or back. Hyperextension of the spine was negative and there was a normal range of back motion. He was able to squat and return, walk on his toes and heels, and maintain his weight on either leg. It was felt that he had reached his maximum degree of improvement and that he had a 20% disability.

In an August 2, 1962 report to the Department of Welfare, Drs. Ray E. Burger and Jorge Ribeiro stated that plaintiff's right leg would remain shorter and that he would have some pain, stiffness and discomfort in the lower back and pelvis. He was also described as nervous and having a slight numbness in his right little toe. It was felt that he would continue with about the same degree of disability and that he should be seen by the vocational rehabilitation service for possible training.

Dr. Lewis Z. Wright examined plaintiff on January 31, 1963 for compensation purposes. Physical examination revealed him as walking with a slight limp and having tenderness in the lumbo-sacral region. Forward bending was within 12 inches of the floor. There was a decrease in trunk motion, a pelvic tilt with the right side being lower, the right leg was shorter and there was numbness in the lateral aspect of the right thigh and lower leg. There was a palpable deformity in the brim of the right ilium. The reflexes were normal and there was numbness in the right little toe and adjacent toe. Dr. Wright felt plaintiff was entitled to a thirty percent permanent partial disability.

On September 17, 1963, Dr. Smith again examined plaintiff for compensation purposes. He was described as having normal sensations in the lower extremities. Reflexes were present and while the right leg remained ½ inch shorter, there was no atrophy of the lower extremities. Straight leg raising and Lasegue test were negative as was Patrick's test. The pelvis was not tender and there was normal hip action. Hyperextension of the spine was negative and there were no muscle spasms. Dr. Smith did not feel that there had been any aggravation of the condition and suggested that he continue to use his elevated shoe. He also felt plaintiff should have vocational rehabilitation training, as it would be quite a shame for a young man with two perfectly good upper extremities not to make use of them.

Dr. Robert E. Dye examined plaintiff on November 4, 1963 for epigastric burning. He was described as having many complaints. The physical examination was reported as completely normal, plaintiff being a well-developed well-nourished individual in no distress. A chest X-ray was normal and gastrointestinal series showed a questionable prepyloric ulcer. Although the stomach findings were not altogether convincing that he actually had an ulcer, he was placed on a bland diet and given medication with instruc-

tions to return in three weeks for additional X-rays.

In a November 30, 1963 report to the Department of Welfare, Dr. Ribeiro diagnosed an old well-healed pelvic fracture with right leg shortening, gastric ulcer, and psychoneurosis. He recommended that plaintiff see a psychiatrist and stated that, though he needed training, he was able to work.

Dr. O. Lake Huffman submitted a report to the Department of Health, Education and Welfare, dated May 22, 1964, in which he found the right leg ½ inch shorter, muscle spasm in the left flank, a stiff and swollen right ankle and paresthesia of the right foot. His diagnosis was post-traumatic arthritis of both hips, leg cramps, weakness of the musculature of both hips, arms and lower back. It was his opinion that plaintiff was totally and permanently disabled; unable to engage in any gainful occupation.

Dr. Daniel Hale examined plaintiff on May 21, 1964 and the report he submitted to the Department of Health, Education and Welfare is largely illegible and lacking in objective findings. It does state that plaintiff is unable to work.

On February 19, 1965, Dr. Huffman submitted a report to the Department of Welfare in which he diagnosed old healed fractures both sides of pelvis, old healed fracture of both hips, shortening of right leg, attendant muscle spasm of low lumbar area, stiff right ankle, and paresthesis of the right foot. He felt there was no hope of improvement and that plaintiff was totally and permanently disabled for life.

Plaintiff was given a psychiatric examination at the Beckley Mental Health Center on March 25, 1965. In his report, Dr. W. E. Wilkinson stated: "At the time of our examination this man seemed only moderately tense and nervous. He did not appear to be severely depressed. When I implied that he might be able to return to work of some kind, he became quite hostile. He is quite obviously not motivated toward rehabilitative measures. We could elicit no secondary psychotic symptoms or any severe thinking disorder at the time of our examination." The diagnostic impression was cyclethymiac personality disorder. It was doubted that plaintiff would be able to benefit from any rehabilitation measures at that time, since he was quite convinced that he was completely and hopelessly disabled and thus lacked the necessary motivation to benefit from such measures.

The last medical report is that of Dr. Howard A. Swart and is of an examination on January 29, 1966. Plaintiff is described as well developed, well nourished and walking without a limp. Examination of the spine revealed a slight tilt to the right. Although plaintiff referred to pain in the lumbar region and in both hips, there was no tenderness and all spine motions were free and painless as were all hip motions. There was an apparent ⅝ inch shortening of the right leg. The calves and thighs were the same size. Knee jerks were present with the right being greater than the left. Ankle jerks were equal and active. Squatting was painless and he could stand and walk on tiptoes and heels without trouble. All motions of the shoulders, elbows, forearms, wrists, and hands were normal. There was no swelling of the right ankle and side motions were normal. X-rays of the lumbar spine revealed no bone change except for some irregularity in the transverse process of L–4 on the left of the old injury. The disc spaces appeared normal. There was some irregularity of the anterior portion calcaneal bone of the right foot from an old injury. Dr. Swart could see no reason why plaintiff could not work. The foot condition and irregularity at L–4 were considered minor and should not prevent his working.

■■ The law is clear that any condition that has its onset or becomes disabling after a claimant last meets the special earnings requirements of the Act may not be the basis for a favorable finding. Taylor v. Ribicoff, 204 F.Supp. 144 (S.D.W.Va. 1962). Likewise the determination by the Workmen's Compen-

sation Fund in November 1964 that plaintiff was permanently disabled is not binding on the Secretary, and in view of the different tests and purposes of the agencies it is of doubtful value as a persuasive factor. Carpenter v. Flemming, 178 F.Supp. 791 (N.D.W.Va. 1959).

In February 1966, plaintiff entered the West Virginia Rehabilitation Center at Institute, West Virginia. He left after a few days complaining of back pain. His stay was not sufficiently long for an adequate evaluation, however, the individual reports by various personnel indicated a rather negative attitude on plaintiff's part. At the June 28, 1966 hearing, plaintiff's attorney requested that he be given an opportunity to return and receive a complete evaluation.

Plaintiff returned to the Center in August 1966 and remained for two weeks. He was evaluated separately by the various departments and one of the reports, that of Mrs. Betty Roberts, a counselor gives credence to plaintiff's claim of disability. It states, "Mr. Hamilton had a one week tryout in auto mechanics. His attitude continued to be good; however, his physical tolerance was poor. Since this is a more actual, real work situation, it is significant that the client had an increase of pain and was unable to do the assigned tasks." Nevertheless, it was the final opinion of the Multi-discipline Vocational Evaluation Team that he "would be able physically to perform light to moderate work in the semi-skilled area. He also has the necessary aptitudes to enable him to work at a semi-skilled occupation. The Team feels that his most disabling condition is the neurotic reaction."

While there is doubtless sufficient evidence to support a conclusion contrary to the Secretary's, it is difficult to ignore the detailed testing and X-ray basis of the physicians who expressed the opinion that plaintiff retained substantial ability. It is noted that clinical medical reports are not necessarily dispositive of the question of a claimant's disability. Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965) and that the ultimate fact in issue,

that is, his ability to engage in any substantial gainful activity, is not to be resolved on the basis of medical opinion evidence as to the ultimate fact, Underwood v. Ribicoff, supra. Nor would the expert opinion of the Vocational Evaluation Team necessarily be the final word. We, nevertheless, find the conclusion of such experts in the field difficult to ignore.

It is recognized that the question in actions of this nature is not what men bear or what men generally bear, but what, in view of all the evidence, the particular individual can be expected to bear, Dodsworth v. Celebrezze, 349 F.2d 312 (5th Cir. 1965), and that even pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964).

Likewise there may be a disability due to some mental impairment without medically determinable physical impairment so that a person with a severe hypochondria might experience pain so intense that it becomes disabling, and if the fact of the suffering and resultant disability is supported by competent psychiatric evidence it might entitle one to benefits. Mode v. Celebrezze, 359 F.2d 135 (4th Cir. 1966). While there is no question that plaintiff has suffered a severe and painful injury and is no longer the same physically as before the injury, it is fairly clear that much of his problem is mental in origin. In any event, at the time of the expiration of his insured status he was only thirty years of age, had completed the 10th grade in high school and possessed average intelligence and ability. Though his prior work experience was largely limited to mining, the instant situation is markedly different from the injured, untrained, nearly illiterate middle-aged miner, who would, under the best of circumstances, be a passed-over commodity on the labor market.

Concerning mental disability, there is a delicately balanced tight rope between

individuals who become mentally unable to work because of their physical inabilities and those who use their physical handicaps to create a basis for a resulting mental aversion to seeking or continuing the struggle of earning a livelihood. This is an area fraught with pitfalls and which seeks its answers in the innermost workings of the human mind. It is a field in which the practitioners of the art of psychiatry are prone to differ and thus the Secretary, as well as the courts, should be loath to say with certainty in any given instance that it is one or the other.

Nevertheless, the implication of the Secretary's finding is that plaintiff is not disabled as a result of a mental deterioration caused by his physical impairments. Is is rather the situation of an individual's refusing to recognize that it is his own attitude and outlook, not the actual degree of physical limitation, that is preventing his returning to work. Such a situation must be distinguished from that in Beggs v. Celebrezze, 356 F.2d 234, (4th Cir. 1966), where the claimant's mental disability was found to be the result, not the cause, of his unemployment. In that circumstance, there was a true mental disability. In the present case, the reason for not working though mental, is not a disability. We do not, however, mean to infer that this is equivalent to malingering; to divide individuals into two classes—the truly mentally disabled and the malingerers—is an oversimplification of the mental process.

■■■ It is sufficient to state that under the Act's definition of disability there are circumstances when individuals convince themselves that they are disabled, but that under the evidence of the record the Secretary is justified in concluding that they have, nevertheless, failed to establish the requisite degree of determinable impairment entitling them to benefits. In view of the medical findings and opinions of physicians and the psychiatrist, as well as the vocational

rehabilitation reports, we cannot say that this record lacks substantial evidence to support the Secretary's findings that plaintiff retains significant capacity, notwithstanding his admitted physical impairments, even though a contrary conclusion could be sustained on the same evidence. However, when an individual has shown an inability to return to his prior occupation, which plaintiff has definitely done, the burden becomes the Secretary's to show the general availability of jobs for which he is fit and qualified. The Secretary need not show that a particular employer has a job available for the claimant or in every case that employment exists within a specific geographic boundary. Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966).

■■■ In an instance such as this where the critical date is three years prior to the hearing, the Secretary can only be expected to enumerate jobs presently existing and, as far as possible, establish that the same or similar positions were likely to have been available during the period in question. At the hearing Dr. Carroll E. Smith, a highly qualified vocational consultant, testified concerning the availability of jobs in the McDowell County, West Virginia and adjacent areas that plaintiff retained the capacity to perform.

■■■ In view of the instant record and the requirements of Wimmer v. Celebrezze, supra; Cooke v. Celebrezze, 365 F.2d 425 (4th Cir. 1966) and Hilton v. Celebrezze, 367 F.2d 481 (4th Cir. 1966), and our prior Memorandum Opinion, we believe that the Secretary has sufficiently sustained his burden in adopting and accepting the expert witness' findings.

Accordingly, in view of the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and defendant's motion for summary judgment, therefore, is granted.