Edgar W. **BALTIMORE**

v.

John W. **GARDNER, Secretary of Health,
Education and Welfare.**

No. 66–C–25–A.

United States District Court
W. D. Virginia,
Abingdon Division.

June 3, 1967.

Glen M. Williams, Jonesville, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

OPINION

DALTON, Chief Judge.

Claimant, Edgar W. Baltimore, brings this action pursuant to 42 U.S.C. § 405

(g) to review a final determination of the Secretary of Health, Education and Welfare dated January 28, 1966 denying him disability benefits and a period of disability. Claimant is forty-nine years old, is married and has seven children, four of whom are still living at home. Claimant's address is given as Route 1, Dryden, Virginia, but his home is located approximately two miles from Pennington Gap. He has a ninth grade education and, prior to being laid off in 1963, he had worked in the mines for approximately 27 years. Although many years ago he did do some carpentry work on a government project over in Tennessee, the only other gainful activity in which he has engaged is that of a part-time preacher of the Freewill Baptist Church.

In his application filed June 30, 1964 claimant alleged disability beginning December 15, 1963 as a result of arthritis of the spine, a removed disc and a heart attack.

The hearing examiner considered claimant's condition under both the pre-1965 and the present standards. As claimant will continue to meet the special insurance requirements through September 30, 1967, the hearing examiner's finding that claimant was not disabled took into account all conditions occurring up to the date of his decision, and the court may consider any evidence of a disability up to date of the Secretary's final decision. Although the hearing examiner's determination which later became the final decision of the Secretary was that claimant could engage in substantial gainful activity, it was found that claimant's physical condition precluded his returning to his former employment.

The medical history shows that claimant apparently suffered a heart attack in 1957 for which he was hospitalized 17 days. In 1958 claimant entered the hospital again, this time for the removal of a herniated lumbar disc. A general physical examination was made at the time to determine claimant's ability to undergo the operation and claimant was found to be in good health. His heart was found to have no significant enlargement with normal rhythm and good tones. An electrocardiogram showed a slight, but insignificant, abnormality which was considered to be a normal variation. The operation to remove the disc was performed and was a success. Claimant returned to his work in the coal mines where he continued in the position of a "clean-up man" until the mine closed down in April, 1963.

In December of 1963 claimant complained of a feeling of tightness and compression in his chest which occurred while he was preaching. He was examined by Dr. H. A. Kinser who, after a complete physical examination and a review of claimant's medical history concluded:

I felt from this history that this man was having symptoms due to his heart brought on by tension. As stated above there was nothing on physical examination of any particular significance. His laboratory work was not remarkable. Chest x-ray showed some fine reticular type of fibrosis, more of the right lung than the left. E.K.G. was not remarkable. I felt that this man had arteriosclerotic heart disease with angina. He was placed on Peritrate, 20 mgs. q. i. d. to be followed as an out-patient.

Significantly, an x-ray examination made at the time disclosed that claimant's dorsal spine was essentially normal.

Claimant was examined again by Dr. Kinser in June 1964. At this time Dr. Kinser concluded by saying:

This man states that the only work that he is doing at this time is preaching but that he had been offered a job running a coal machine in the mines but did not feel that he should go in the mines and do this strenuous work because of his arteriosclerotic heart disease and agina pectoris. I feel that he should do some other work which is lighter than running a coal machine.

An examination by Dr. Gonzalez made in September, 1964 led to a diagnosis of:

Anxiety state, chronic, severe. Mixed arthritis with narrowing of C–6 and L–5.

A further examination by Dr. Hamilton in December, 1964 added little to what had already been diagnosed. An examination by Dr. Hogan in March, 19-65, found that many of claimant's subjective complaints were probably the result of "psychophysiological reaction, cardio-vascular type, chronic, moderate". Dr. Hogan concluded:

This man, however, does have real problems since he has a large family without visible means of support since he has never done anything but heavy labor and this is no longer possible in his present condition.

The medical evidence thus reviewed fairly supports the finding that claimant, while unable to return to his former work, is not totally disabled.

■■■ The Secretary, of course, may not disregard the claimant's subjective complaints. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Pain which is unaccompanied by any objectively observable symptoms may be sufficient to support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d 293 (2d Cir. 1964); Coleman v. Gardner, 264 F.Supp. 714, 718 (S.D.W.Va.1967). However, it appears from the record that any pain claimant suffers is largely psychological and in any event, it is not so severe as to be disabling. As such, it may not overcome the determination of the Secretary, supported by the medical evidence, that claimant is not precluded from doing light work.

■■ A finding that claimant may not return to his former employment places the burden upon the Secretary to show that jobs of a light nature which claimant is capable of performing exist within the area surrounding claimant's home where he can reasonably be expected to look for work. Both the determination of claimant's employability in a certain job and the determination of the distance he may be expected to travel from his home in order to work at that job depend in large part upon his original and residual capacities. Both findings must be supported by substantial evidence. The distance question is very much a matter of judgment, dependent always upon the facts of each case. On the other hand, the evidence necessary to support a finding of employability at a job or jobs is subject to strict requirements as to sufficiency. Boyd v. Gardner, 377 F.2d 718 (4th Cir. April 4, 1967); Gardner v. Earnest, 371 F.2d 606 (4th Cir. 1967).

In this instance it has been unnecessary to reach the question of the scope of the relevant geographic area in which claimant may reasonably be expected to market his labor. The Court of Appeals for this circuit has repeatedly emphasized the need for evidence which relates directly to claimant's employability in the job at which the Secretary would show that he can work. The record in this case does not contain sufficient evidence on this point and, therefore, the finding of the Secretary that claimant may be gainfully employed cannot stand.

In order to establish claimant's employability, the Government sought the opinion of a vocational expert. Dr. Joseph J. Ray. Dr. Ray, after testifying that claimant's educational background was about average for the area, and that claimant would have little or no transferable skills from his mining experience, was asked the following question:

Q. Now, did you use any kind of industrial studies or vocational texts—anything in preparing for your testimony in this proceeding?

A. I used several sources. I looked at the area, of course, and found that in the area itself there is not too much census material available. I looked at the Tennessee Census for '63 and got the number of industries in the larger cities within 25 to 50 miles of this area to see what possibilities were in the larger industries, which would im-

ply the claimant having to move to the seat of operation. But I did survey what is in that larger area. And I also used the Dictionary of Occupational Titles. For example, two of the primary industries in Kingston are Eastman Kodak and the press. I looked up what jobs existed in the "9" classification, which is the unskilled or labor classification area, to see if there were any jobs of those two industries which could be done by a man which would start at the bottom with no skills and really do just a labor job.

\* \* \* [There follows a colloquy on the expert's definition of unskilled labor] \* \* \*

Q. You don't mean to imply that you're talking about a hard, strenuous type job?

A. No, I do not. I'm talking about the labor classification in the Dictionary of Occupational Titles at the levels "8" and "9" category. Simple labor requiring no training.

Q. All right. Could you specify some examples of the type jobs you're talking about?

A. Just as samples I went to Eastman Kodak and the printing industry. The printing industry I know pretty well. To see if in those two industries there were jobs that could be performed by a man without prior training, and I found several. As I say, these are suggestive only. One, for example, page 510 in the Dictionary of Occupational Titles. The title is FILM PACKER. Code is 9–09.31. \* \* \*

[There follows a section of the transcript during which Dr. Ray refers to the Dictionary of Occupational Titles to establish the existence of and the duties involved in several other jobs in the photography and printing industries.]

In the light of Dr. Ray's testimony reproduced here, it appears that he ascertained the location of Eastman Kodak and the printing establishment from the Dictionary of Occupational Titles or another manufacturing directory. Having found that these industries were located in Kingston, he then appears to have turned to the Dictionary of Occupational Titles once again to ascertain what types of employment would be offered by these industries. His introduction: "I went to Eastman Kodak and the printing industry \* \* \*", taken in light of his testimony both before and after, can only mean that he "went" to that place in the Dictionary of Occupational Titles pertaining to those industries. Nowhere in the testimony is there any indication that any field investigation of employment opportunities had been made.

The Court of Appeals for the Fourth Circuit has refused to accept as sufficient mere reliance upon vocational manuals, such as the Dictionary of Occupational Titles. In Cyrus v. Celebrezze, 341 F.2d 192, 196 (4th Cir. 1965), the court affirmed the grant of summary judgment for the claimant where the record contained no evidence to show that the vocational expert had actually checked to see whether the jobs which he had cited from the Dictionary of Occupational Titles were available in the vicinity of claimant's home. A recent decision by the court on this point is the case of Gardner v. Earnest, supra. There the court said at pp. 609, 610 of 371 F.2d:

The standard which emerges from these decisions in our circuit and elsewhere is a practical one: whether there is a reasonably firm basis for thinking that this *particular* claimant can obtain a job within a reasonably circumscribed labor market. While we have condemned exclusive reliance upon the Dictionary of Occupational Titles and similar publications, we have indicated that these manuals are useful tools in opening up, by way of suggestion, an assortment of possible job titles to which the claimant may be suited. They may serve as the beginning, but not the end, of the inquiry. There must be a further showing as to which of these occupations are *in fact* available to a person with the claimant's specific characteristics and impairments. Arm-chair specula-

tion, even by vocational experts, is insufficient in the absence of any evidence that employers in the area have hired persons with the claimant's limitations or would be willing to do so. Theoretical expertise untarnished by any field investigations is not enough. While we do not require the Secretary to take the claimant by the hand and lead him to a specific job, the statute is not satisfied without a *factual* showing of job availability for persons of his limited capacity. True, the Act does not entitle a claimant to benefits if work is unavailable because of depressed economic conditions; yet if, as a practical matter, employers would not hire him because of his age, physical impairments and lack of education, he does not lose his benefits merely because even able bodied persons can find no work in the area. [Emphasis in original.]

 When the evidence of job availability in this instance is measured against the requirements enunciated in Gardner v. Earnest, it is definitely insufficient to allow a finding that the claimant can engage in substantial gainful activity.

In Mullins v. Gardner, 264 F.Supp. 81 (W.D.Va.1967), the court concluded that a claimant's high residual capacity should necessitate less evidence of job availability. This means that, while in every case there must be a *factual* showing of job availability, where there is a high residual capacity, the factual evidence introduced to demonstrate such job availability need not be as strong as in a case where the residual capacity is low. In every case, the minimum requirements of Gardner v. Earnest must be met; that is, the expert must at least have some personal familiarity with the hiring practices of the industrial concern to which he refers.

Dr. Ray lives and works in the Nashville, Tennessee area. Although he stated that he was familiar with the printing industry, there is no evidence that he was familiar with the printing industry in Kingston, or its hiring practices. Nor is there evidence to show that Dr. Ray was familiar with the employment opportunities at Eastman Kodak. Under similar facts, the Court of Appeals disposed of testimony of a vocational expert by stating:

He had no firsthand knowledge that such jobs were actually available or that they would be available to claimant in her physical condition, a woman who suffers dizzy spells upon the slightest physical exertion. There is no factual basis to support a reasonable inference that employers would be willing to employ a person with claimant's impairments.

Hayes v. Gardner, 376 F.2d 517 (4th Cir., April 6, 1967).

The decision of the Secretary of Health, Education and Welfare denying disability benefits is not supported by substantial evidence and, therefore, is reversed. The case will be remanded to the Secretary for determination of a period of disability and the amount of benefits to which claimant is entitled.