Isidore DITLOW

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare.

Civ. A. No. 13381.

United States District Court
D. Maryland.

Feb. 28, 1963.

Edward L. Coleman, Baltimore, Md.,
for plaintiff.

Joseph D. Tydings, U. S. Atty., and
Carl J. Lorenz, Jr., and Robert J. Carson,
Asst. U. S. Attys., Baltimore, Md., for
defendant.

NORTHROP, District Judge.

This is an action under Section 205(g)
(42 U.S.C.A. § 405(g)) of the Social
Security Act, as amended, to review a
"final decision" of the Secretary of
Health, Education and Welfare disallow-
ing the plaintiff's claim for a period of
disability and for disability insurance
benefits pursuant to Sections 216(i) (42
U.S.C.A. § 416(i)) and 223 (42 U.S.C.A.
§ 423), respectively, of the Social Securi-
ty Act, as amended. The Appeals Coun-
cil of the Social Security Administra-
tion, in making a formal review, secured
and accepted additional evidence and then
sustained the decision of the Hearing

Examiner against the claimant. Therefore, it is the final decision of the Secretary, and all administrative remedies have been exhausted.

■ This court, having reviewed the record of the proceedings and evidence before the Hearing Examiner and the Appeals Council, having heard argument in open court, and having considered the briefs filed herein by the parties, concludes that the decision reached by the Secretary must be reversed. This court does not find his decision, that the claimant was not unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, within the meaning of Sections 216(i) and 223, to be supported by substantial evidence. Rather, it appears that the only conclusion which could be supported by the evidence is that the claimant was unable to engage in any substantial gainful activity as of October 13, 1959, when he filed his application with the Social Security Administration, and at all times thereafter.

The plaintiff, who stated he was fifty-two years old when he filed his application for disability benefits, had for many years been an upholsterer until ill health allegedly forced him to stop working in December 1958. Born in Russia, he had a sixth grade education. Except for some clerking in a grocery store, the plaintiff's only job experience has been upholstering. His reason for terminating employment was a chest condition and shortness of breath. In the development of his claim, considerable evidence was amassed to permit a determination of the severity of this chest condition. In particular, the Hearing Examiner and the Appeals Council had before them reports of Dr. Milton B. Kress, of Baltimore, and of Dr. Bruce W. Armstrong. Dr. Armstrong's report was based on a fairly exhaustive physical examination made at the Cardio-Pulmonary Laboratory of the University of Maryland Hospital on November 25, 1959. In connection with this same examination, a consultation with Mr. Alfred Gross, Clinical Psychologist, was secured, apparently at Dr. Armstrong's suggestion, and was in lieu of a complete psychiatric evaluation which the plaintiff was reluctant to undergo.

On the basis of the medical evidence and of a hearing attended by the plaintiff and his counsel on August 8, 1960, in Baltimore, the Hearing Examiner decided that the respiratory ailment was not of such severity as to prevent the plaintiff from engaging in all substantial gainful activity, and that the evidence of the claimant's psychological condition likewise would not support a finding of disability. The hearing before the Appeals Council held July 6, 1961, prompted that body to authorize a psychiatric consultation with Dr. Jonas R. Rappeport of Baltimore, and the Appeals Council also accepted as additional evidence two letters by persons who were acquainted with the plaintiff in the upholstering business. The Appeals Council's decision, while in agreement with the Hearing Examiner as to the respiratory condition, was principally devoted to a careful consideration of the claimant's mental condition. It was the Council's conclusion that the claimant, while psychologically somewhat maladjusted, could not be found disabled as of October 13, 1959.

With the conclusions of the Hearing Examiner and of the Appeals Council in regard to the plaintiff's respiratory condition this court has no dispute. The plaintiff's counsel has, with some force, pointed out that the Hearing Examiner's written decision largely ignored testimony at the hearing which suggested that upholstering required the plaintiff to turn over substantial pieces of furniture. It would appear that the Hearing Examiner and the Appeals Council may not have been correct in assuming that the plaintiff's occupation was sedentary. This possible misconception does not seem to be of major importance, in view of the total picture.

■ A concept important to the present case is found in a quotation by the Court of Appeals for the Fourth Circuit

in Underwood v. Ribicoff, 298 F.2d 850, at 852, from Subpart P, § 404.1502(b) of the Secretary's regulations:

"Conditions which fall short of the levels of severity indicated must also be evaluated in terms of whether they do in fact prevent the individual from engaging in any substantial gainful activity."

Underwood lists the four elements of proof applicable to show ability to engage in substantial gainful activity; these are, briefly:

1. Medical data;

2. Expert medical opinion;

3. Testimony as to the claimant's subjective pain; and

4. Claimant's age and vocational background.

It has not been seriously contended in the present case that the plaintiff is capable of mastering any new trade, and the factual situation is therefore quite different from that in Underwood. Nevertheless, the elements of proof listed in that decision seem pertinent here because the key to the Secretary's decision seems to this court to be his failure to do justice to the second and fourth. Specifically, the decision depends on ignoring the implications both of expert psychiatric and psychological opinion and of significant statements supplied by the plaintiff's former associates as to his poor employability.

A review of the transcripts of the hearings before the Hearing Examiner and Appeals Council leaves little question that the plaintiff has major subjective complaints. He reported to the Hearing Examiner that he was tired, that he had to rest twenty hours out of twenty-four, and that every few steps he got out of breath and coughed. Pain, too, was alleged. Passing over the reports of Doctors Kress and Armstrong, which indicated to the Secretary an inadequate physical basis for the respiratory complaints, we quote from the report of Mr. Gross, based on the psychological examination of November 25, 1959:

"The test data suggests that we are dealing with a man who entertains both grandiose as well as persecutory ideas. These ideas are not prone to be clearly evident clinically. What is more likely to appear clinically, are sporadic outbursts of aggressive behavior, verbal chiefly, mixed with some paranoid ideation. The tests indicate that this man is socially isolated, withdrawn and that this pattern is a defensive one; that is, it is an attempt to control paranoid ideas by not subjecting himself to personal relations. This man is rigid in his thinking and shows no ability to go along with or entertain anyone else's notions. Any intrusion into this privacy quickly irritates him and one is thereby prone to be the object of Mr. Ditlow's very strong hostile feeling.

'To be emphasized, is the fact that both the grandiose and paranoid ideas, as well as his aggressive impulses are under careful and rigid control. Thus, masking overtness. The paranoid and schizoid character of his social adjustment appears to be a markedly chronic one and the tests do not indicate that Mr. Ditlow is capable of changing this type of adjustment.

*"The tests do not suggest that this man is hypochondriacally preoccupied with his body,* nor is there any evidence that he entertains any desire and strained ideas about this bodily function. I cannot make any other contribution towards an explanation for his present complaint. *There is no doubt that this man is not a malingerer.* [emphasis supplied].

*"Diagnostic Impression:*

"Schizophrenic reaction, chronic, undifferentiated type, (borderline schizophrenic)."

The opinion of Dr. Rappeport, in the report obtained by the Appeals Council in 1961, reads in part:

"It is my feeling that we are here dealing with a basically schizoid,

paranoid person who has made a [sic] adequate work adjustment up until 1958, but who has apparently made only a border-line social adjustment in the community. * * * [H]e * * * for a number of years has lived alone, somewhat in the manner of a recluse. Although the patient denies this, there is some evidence from former employers, and some of his vagueness would indicate that there is most probably some truth to these accusations, that at times he has entertained some delusional ideas of paranoid nature. There is further evidence also that the physical findings of him are not consistent with his degree of impairment *although there is certainly no evidence that the patient is malingering*. It seems more likely that this is a man with a border-line emotional adjustment who as the stresses of age, etc., have crept upon him, has tended in a way to use physical symptoms as opposed to emotional symptoms to allow him, in a sense, to keep himself together. I would suspect it would be very difficult for him to relate to people in any meaningful manner or to be forced to associate with them in any forced way, likewise because of his inability to accept or recognize the emotional aspects of his difficulty, *I would doubt very much if any psychiatric treatment would be of any help to him.* In this situation it would appear that the prognosis is somewhat guarded and one would expect *further breakdown* in his social adjustment with an increase in his physical complaints as well as possibly a development of a more frank paranoid psychosis as time goes on. Because of his rigid need to stick to his somatic symptoms as his cause of disability, it would not appear that any attempt at superficial psychotherapy or drug therapy would be of any use." [emphasis supplied].

The two letters submitted by persons who had known the plaintiff during his working days give eloquent testimony to the difficulty of working with him, and suggest that the paranoid notions which Dr. Rappeport and Mr. Gross reported were by no means exaggerated; one letter says bluntly:

"Due to his illness it was always difficult to work with him but in later years it became impossible."

It may be arguable that the plaintiff's objective physical ills in the aggregate would warrant a finding of disability; they included, at the time of his examination at University Hospital, probably-inactive pulmonary tuberculosis, chronic emphysema, pyuria, cylinduria, and hematuria, and bleeding hemorrhoids. But, in addition to these, the psychological findings, even before the case reached the Appeals Council, indicated serious emotional complications which tended to be expressed in physical malfunctioning. The Appeals Council, presumably feeling that further psychiatric data would permit them to reach a decision with more confidence, obtained the psychiatric examination. This additional examination lent support, in this court's view, not to the Secretary but to the claimant. If we assume that the plaintiff is not malingering—and the psychiatrist and psychologist unite in their opinion that he is not—then the medical and lay opinion indicates that the plaintiff's mental problems cause both the debilitating respiratory symptoms complained of and the paranoid frictions with fellow workers. As to the respiratory complaints, the court believes judicial notice may be taken that psychosomatic symptoms are not to be equated with malingering. It should also be noted that the two experts just mentioned also agree that the plaintiff's mental difficulties are probably not amenable to cure.

This court recognizes that it would be possible to remand this case for additional medical or other evidence. Aside from the difficulty of obtaining such evidence now which would be relevant to the plaintiff's condition in 1959, the court feels that, in effect, the Ap-

peals Council has already remanded for exactly the same purpose, and has obtained highly pertinent additional data. What has emerged is a one-sided picture of inability to engage in substantial gainful activity, whether the complaints are physical (as the plaintiff has consistently claimed) or actually in large part psychosomatic. That the plaintiff insists that his disability is physical is not to be held against him; indeed, this emphasizes his apparent lack of insight and would seem to contradict the Appeals Council's opinion that "he has stated his problems with clarity and intelligence." It is this court's opinion that the clear weight of the evidence, taken as a whole, indicates that the plaintiff was, in terms of the Social Security Act, disabled on or after October 13, 1959, and that the record does not contain substantial evidence to support the Secretary's finding to the contrary.

For these reasons, the court concludes that it would not be justified in remanding this case to the Secretary's representatives for the taking of additional proof and that it must substitute a finding that the plaintiff is entitled to benefits. Accordingly, the determination of the Secretary is reversed.