Mrs. Jennie **PRESTIGIACOMO**

v.

Anthony J. **CELEBREZZE,** Secretary of Health, Education, and Welfare.

Civ. A. No. 2887.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Oct. 30, 1964.

Joel B. Dickinson, Baton Rouge, La., for plaintiff.

Gene S. Palmisano, Asst. U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., for defendant.

WEST, District Judge.

Plaintiff brings this action under Section 205(g) of the Social Security Act, as amended, Title 42 U.S.C.A. 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying her claim to a period of disability under Section 216(i) and for monthly disability insurance benefits under Section 223(a) of the Act. Petitioner filed application for disability benefits on July 10, 1962, and on September 12, 1962, was notified, inter alia, by the Chief of the Evaluation and Review Branch of the Social Security Administration that:

> "We find that although you do meet the earnings requirement you do not meet the disability requirement."

Her claim for disability benefits was then denied. After requesting a reconsideration of this holding, petitioner was notified on November 15, 1962, by the Chief of the Reconsideration Branch that:

> "After thoroughly reviewing the record in your case, including the additional medical evidence, and considering your statements, age, education, training, and experience, we find that the previous determination is proper under the law."

She then applied for a hearing before the Hearing Examiner, which was held on February 28, 1963. On March 19, 1963, the Hearing Examiner rendered a written opinion in which he denied petitioner's disability benefits on the ground that she had "not established that she has impairments either singularly or in combination of such severity, as to preclude her from engaging in any substantial gainful activity at any time for which her application of July 10, 1962, was effective." (It was found, however, that petitioner would continue to meet

the earning requirements for disability purposes until June 30, 1966.)

■ Petitioner then applied to the Appeals Council for review. On September 12, 1963, her request for review was denied. This present suit followed on November 12, 1963. After this suit was filed, both petitioner and respondent filed motions for summary judgment which were, by consent, submitted on the record as it now stands, including a complete copy of the transcript of all prior proceedings. After a thorough review of this record, it is the opinion of this Court that the findings of the Secretary of Health, Education and Welfare are not supported by substantial evidence, and that therefore, the final decision of the Secretary of Health, Education and Welfare denying petitioner's claim for disability benefits should be reversed.

Petitioner is 57 years of age. Her total formal education consisted of completing the first three grades of elementary school. During the four or five years preceding her alleged disability she worked as a seamstress in a laundry, and prior to that, she worked for about six years as a saleslady selling linens, baby clothes and gifts. In April of 1961 she fell, injuring her knee and her back. She thereafter experienced difficulty with both her knee and her back, but experienced particular difficulty in walking, standing or sitting due to the knee injury. Her knee grew progressively worse, and in July of 1961, upon advice of her doctor, she was forced to terminate her employment. Some four or five years preceding her injury, she was forced to terminate her employment as a saleslady because of the fact that she had varicose veins which made it impossible for her to stand on her feet all day. It was at that time that she obtained work in the laundry first as a dispatcher dispatching clothes to the ironers, and then, when her legs began to give her more trouble, as a seamstress operating a sewing machine mending clothes. In July of 1961, after her injury of April, 1961, she was advised by Dr. Alvin Stander, a qualified orthopedic surgeon, that she would have to leave her job. On October 6, 1961, Dr. Stander rendered a report in which he stated that petitioner had apparently sustained a tear of the medial meniscus, and that it appeared that an arthrotomy, with the removal of the torn medial meniscus, was indicated. Dr. Stander's report of November 17, 1961, indicates that surgery was performed on November 3, 1961, and that a ruptured medial meniscus was found. Several small osteophytes were also noted at the margin at the articular surface just under the medial collateral ligament of the left knee which were also removed. On January 4, 1962, Dr. Stander issued a report in which he indicated that petitioner's progress was satisfactory, and that she should be a candidate for discharge within two or three weeks. However, Dr. Stander issued another report on April 2, 1962, showing that petitioner was still under his care, that she was "markedly obese and does have some osteoarthritis" which, he stated, he was certain would prolong her disability. He suggested that she attempt to return to work on a trial basis. On May 11, 1962, Dr. Stander issued another report in which he stated that petitioner had osteoarthritis of both knees and that she would continue to have complaints referable to the left knee joint. He again suggested that she attempt to return to work to see how she would progress. Dr. Stander's report on June 21, 1962, stated that petitioner did return to work but experienced considerable discomfort and swelling of the left knee joint. He stated that petitioner did have some residual disability as a result of her injury and pre-existing osteoarthritis of the knee joints, and estimated her disability at approximately 20 per cent of the left lower extremity. On July 13, 1962, Dr. John W. Lewis, a general practitioner, reported that petitioner was suffering from hypertrophic arthritis of the left knee, and that she was "unable to work in laundry," even though, as reported by him, he was aware of the fact that all petitioner did was to mend clothing and linen, and that the only skill involved was that of operating

a sewing machine. Dr. Lewis stated that while neither the quality nor the quantity of her work was affected, it was necessary that she quit because her leg swelled up and became too painful for her to work. On August 8 of 1962, Dr. Alvin Stander rendered a report in which he stated "plaintiff unable to do any kind of work that requires prolonged standing or walking." A report was rendered by Dr. Charles Mosely, a surgeon, on August 16, 1962, which stated that petitioner had injured her back and left knee in April of 1961, and that he had rendered conservative therapy treatment, after which she showed some improvement, and that he, Dr. Mosely, discharged her on June 22, 1961. Obviously, his discharge was premature in view of all of the subsequent medical reports of other doctors. Dr. Alvin Stander again examined the petitioner on October 21, 1962, at which time he concluded "Patient is unable to do any work that requires standing or walking. She states she is even uncomfortable sitting at times." On January 29, 1963, Dr. John T. Lewis rendered another report in which he stated that the petitioner would not be able to work in the laundry, which work was practically confined to doing work in a sitting position using a sewing machine. On February 25, 1963, Dr. R. Roy Rabalais, an obstetrician and gynecologist, rendered a report in which he stated "It is certainly obvious that because of her age, obesity, hypertension, and left leg disability, she is physically unable to engage in any gainful employment, and probably could not get a job in the first place because of these disabilities." Petitioner was also examined by Dr. J. F. Halley, an orthopedic surgeon, who simply diagnosed "arthritis, dorsal spine," and whose report indicated that the patient was fitted with a lumbo-sacral corset. In his report he made no mention of her ability to work.

In addition to the medical testimony outlined above, petitioner's daughter, Mrs. Clinton T. Dyess, testified that petitioner suffered from high blood pressure and was frequently subjected to dizzy spells. She further testified that petitioner suffered very severe spells about once a month, and that she had mild dizzy spells about once a week. She testified that the arthritic condition from which petitioner was suffering actually caused her to become stooped, and that she had seen her in such pain that she could not even "stretch." She testified that to her own knowledge her mother could not stand or sit for long periods of time due to the swelling of her knee, and that when she sat in a chair it was necessary for her to prop her leg in order to prevent it from swelling too badly. She stated that her mother could stand for only about 30 minutes at a time. Petitioner also had had four benign tumors removed, three from the breast and one from her arm. She testified that petitioner, at the present time, had four or five such tumors that should be removed. She stated that she and her sisters did most of petitioner's housework, and that petitioner did very little housework or cooking for herself.

There is not one bit of evidence in this case by any doctor or by any lay person which states or even indicates that this petitioner is physically able to engage in any gainful occupation. On the contrary, all of the medical testimony, and certainly all of the lay testimony, is to the effect that this petitioner is, in fact, unable to engage in any type of work which would require either prolonged standing, prolonged sitting, or prolonged walking.

It is rather difficult to understand what type of work she could effectively engage in that would require neither standing, walking, or sitting. There is no conflict in the evidence. The only thing open to question is whether or not the Hearing Examiner's interpretation of the evidence was sufficient for him to hold that petitioner is not entitled to disability benefits. In the process of his reasoning, the Hearing Examiner merely disposed of each of petitioner's complaints, one at a time, and decided that each of these complaints, taken sepa-

rately, did not constitute sufficient disability to prevent her from engaging in gainful employment. However, it is not enough to say that any one of her various ailments was not sufficient to prevent her from working. She is a human being, who must be regarded as such, and in evaluating her ability to work, her overall condition, including all of her disabilities, must be considered together. As was stated in the case of Corbin v. Ribicoff, 204 F.Supp. 65 (D.C.1962):

"The four elements of proof to be considered in making a finding of plaintiff's ability or inability to engage in any substantial gainful activity, as laid down in the recent case of Underwood v. Ribicoff, [4 Cir.,] 298 F.2d 850 (1962), are as follows: '(1) The objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings, (2) the diagnoses, and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability testified to by Claimant, and corroborated by his wife and his neighbors, (4) Claimant's educational background, work history, and present age.'"

In order for petitioner to be entitled to receive disability benefits, it must, of course, be found that she is not able to engage in "any substantial gainful activity." But sporadic or infrequent activity does not necessarily establish ability to engage in substantial gainful activity. Substantial gainful activity means the performance of substantial services with reasonable regularity in some competitive employment or self employment. It relates to the range of activities that the individual can perform. Complete helplessness is not necessary to a finding of an allowable disability. Sebby v. Flemming, 183 F.Supp. 450 (D.C.1960). In Butler v. Flemming, 288 F.2d 591 (1961), the United States Court of Appeals, Fifth Circuit, stated:

"Perhaps it is true that history teaches that 'A man may have to endure discomfort or pain and not be totally disabled; much of the best work of life goes on under such disabilities * * *.' But the purpose of much social security legislation is to ameliorate some of these rigors that life imposes. Congress has in effect stated that if a person in unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act."

In Page v. Celebrezze, 311 F.2d 757 (C.A.5 1963), the Court stated:

"This notion that pain must be endured, that pain, no matter how severe or overpowering, is not disabling unless it will 'substantially aggravate' a condition is 'contrary to the standard announced in [this Circuit].' * * * If pain is real to the patient and as such results in that person being physically unable to engage in any gainful occupations suited to his training and experience, and this results from 'any medically determinable physical or mental impairment' the disability entitles the person to the statutory benefits even though the cause of such pain cannot be demonstrated by 'objective clinical and laboratory findings.'"

The Hearing Examiner in the present case seemed to lay stress on the fact that the evidence showed that petitioner was able to do some of her housework, and that she "worked her flowers" once or twice a week for an hour or two. This finding, however, is not sufficient to justify the conclusion that the petitioner is able to engage in substantial gainful activity. As stated in Randall v. Flemming, 192 F.Supp. 111 (W.D.Mich., S.D. 1961):

"The medical evidence establishes that plaintiff cannot engage in

steady employment involving physical exertion. While expert medical evidence is not conclusive upon the legal question of disability, it is to be considered, and where it is not controverted by substantial evidence to the contrary, it is entitled to great weight. * * * In his decision the referee stated: 'The daily activities of the complainant would not appear to be those of a totally disabled individual.' The law does not require that plaintiff show that he is bedridden or completely helpless or that he is totally disabled, in order to qualify for disability benefits. The mere fact that he is mobile and is able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity."

Many, many other cases could be cited to show that a person does not have to be bedridden or totally disabled in order to qualify for disability benefits under the Social Security Act. It is sufficient to show that when considering all of the complaints of the petitioner, together with the petitioner's training, age, work record, education and other qualifications for employment, that he or she is not, in fact, able to render substantial services in some competitive employment with reasonable regularity. There is, in the opinion of this Court, no evidence in the present case upon which to base a conclusion that this petitioner is able to meet those requirements. Therefore, it is the opinion of this Court that the determination of the Hearing Examiner that petitioner is not entitled to disability benefits under the Social Security Act is not based upon substantial evidence, and that such a determination must be reversed. An order will therefore issue herein remanding this matter to the Hearing Examiner for a judgment granting petitioner the proper disability benefits to which she is entitled under the Social Security Act in accordance herewith.