**George D. BETHUNE, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 16560-3.**

United States District Court
W. D. Missouri, W. D.

June 11, 1969.

Duke W. Ponick, Jr., Foust, Moudy & Jacobson, Kansas City, Mo., for plaintiff.

Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT REVERSING DECISION OF DEFENDANT

BECKER, Chief Judge.

This is an action under Section 405 (g) of Title 42, U.S.C., for review of defendant's decision denying plaintiff's claim for disability benefits on June 8, 1967.

### Statutes Involved

Sections 416(i) (1) and 423(c) (2), Title 42, U.S.C., define disability as:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *to be of long-continued and indefinite duration,* * * *"

The emphasized portion was eliminated by the 1965 amendments to the Act, P.L. 89–97, and the following language was substituted:

"* * * has lasted or can be expected to last for a continuous period of not less than 12 months, * * *"
See Section 423(d) (1).

Section 303(f) (1) of P.L. 89–97 makes such amendment effective with respect to applications filed in or after July, 1965, or before July, 1965, if the applicant has not died before such month, and notice of final administrative decision has not been given to the applicant before such month. Monthly payments are not to be increased or made payable under these amendments, however, before the second month following July, 1965. Plaintiff filed his application for benefits on October 22, 1965. Notice to plaintiff of the final decision of the Appeals Council, Department of Health, Education, and Welfare is dated June 8, 1967. Thus, the 1965 amendments would apply to the administrative determination of plaintiff's disability.

Sections 416(i) (3) (B) and 423(c) (1) (B), Title 42 U.S.C., require an insured individual to have 20 quarters of coverage in the 40-quarter period ending with the first quarter of disability. Plaintiff last met this requirement on June 30, 1963.

### Prior Administrative and Court Proceedings

Plaintiff first applied for disability benefits on June 10, 1958, alleging that he became unable to work in July, 1954, because of obesity and a bad heart. This claim was denied by the Social Security Administration on September 29, 1958, following which plaintiff did not pursue his right to an administrative appeal.

A second application was filed October 1, 1962, wherein plaintiff alleged he became unable to work on September 27, 1962, because of a heart condition. The claim was denied both on the initial consideration and on reconsideration. A hearing was had and again the claim was denied. The Appeals Council subsequently declined review of the hearing examiner's decision. Plaintiff sought judicial review by filing a complaint in this Court. On May 25, 1965, Judge Duncan of this Court affirmed the Secretary's decision.

Plaintiff filed the application now under review on October 22, 1965, alleging again that he became unable to work on September 27, 1962, the same onset date alleged in his second application, because of heart and liver impairment. The initial determination made on December 1, 1965, was adverse to plaintiff. An adverse decision was also rendered upon reconsideration on March 1, 1966. After an application for hearing, the hearing examiner held a hearing on September 27, 1966, and denied the claim of plaintiff on December 29, 1966. The hearing examiner determined, as defendant presently contends here, that Judge Duncan's decision of May 25, 1965, and the hearing examiner's decision which it affirmed, are *res judicata* and conclusive in this case, and that, in any case, the plaintiff's impairment has never been of such severity that it rendered him unable to engage in substantial gainful activity. The Appeals Council denied review of the hearing examiner's decision, with the result that the hearing examiner's decision became the final decision of defendant on June 8, 1967. Plaintiff's complaint for judicial review herein was filed August 7, 1967.

### The Medical Evidence and Plaintiff's History

The plaintiff was born on July 17, 1911. (Tr. 56). He testified that he has only a third-grade education (Tr. 59), that he cannot read, and that his ability to write is restricted to signing his name (Tr. 35, 39). His further testimony reveals that he didn't begin school until the age of 7 or 8; that he then quit school at the age of eleven and began working in the coal mines around Paris, Arkansas (Tr. 59, 60); that he continued to mine coal in various states until about 1943, when he went to work for General Motors installing wheels on military vehicles (Tr. 62, 63); that thereafter in 1945 he resumed coal mining in West Virginia and worked there until 1948 (Tr. 62, 96); that in 1949 and 1950 he worked as a section hand for the Union Pacific Railroad (Tr.

105); that in 1951 and 1952 he worked for Helmers' Furniture Company as a general cleanup and handyman (Tr. 105); that for the following three years he worked from time to time out of the Union Hall moving furniture to and from buildings, among other things; that he did not work the years 1956 through 1958 because of heart trouble; and that from 1959 to 1962 he worked as a baker's helper at seven different bakeries (Tr. 64, 106).

The plaintiff further testified that he had no vocational training of any type (Tr. 61); that the only kind of labor he has ever performed is manual labor (Tr. 36, 98); and that he has never performed any clerical or supervisory work (Tr. 104–106).

Plaintiff filed his first application for disability benefits on June 10, 1958, alleging heart and liver impairments (Tr. 79–82). According to his testimony, he had suffered a heart attack in 1961 or 1962 (Tr. 36–37). A medical report compiled by the insurance clerk of General Hospital No. 1 dated June 18, 1958, and based upon a visit of June 6, 1958, revealed that plaintiff had a grossly enlarged heart; that he was rather obese at 215½ pounds; and that he had a productive cough. The recommended therapy was a 1,000-caloric diet. (Tr. 112).

Plaintiff's second claim was filed October 1, 1962. Plaintiff testified in the hearing on that application that he had a heart attack at his home in September of that year (Tr. 37). Medical evidence, in addition to the aforementioned General Hospital report, which was considered on that determination, included the following:

A medical report of W. T. Reeves, D. O., was rendered July 16, 1963, and based upon bi-weekly visits from December 22, 1962, to the date of the report. Dr. Reeves cited the present illness, which he diagnosed as "congestive heart failure", as having begun in 1957. He noted the subjective symptoms of dizziness, "black out" and shortness of breath; and that an x-ray and E.K.G. were in the General Hospital files.

Another report by Dr. Reeves, dated February 13, 1963, was based on visits on January 28, 1963, February 2, 1963, and the date of the report. Again, the diagnosis was "congestive heart," though this report states that the illness occurred in February, 1962. Dr. Reeves noted a history of heart ailments, however, dating back to 1954.

A letter from Wilson H. Miller, M.D., to the Missouri Vocational Rehabilitation Administration, dated August 19, 1963, was based on an examination of August 7, 1963. Dr. Miller noted that, at 5' 5" and 222 lbs., the plaintiff was very obese. Blood pressure was 150/98, pulse 76. Respiratory movements were of normal amplitude and equal. Inspiratory and expiratory dry rales and rhonchi (sic) were heard in the left anterior upper lung area. Slight rales were heard in the right lung. The heart was observed to be "not enlarged to percussion"; heart tones were of good quality, and there were no murmurs. The abdomen was immense and moderately tender in the right upper quadrant. No masses were palpable; the extremities were normal and there was no edema. The chest x-ray revealed elevated diaphragysm, but no flattening of diaphragms. The interpretation was "horizontal heart with borderline cardiac enlargement". Pulmonary Function Studies conducted by Dr. Miller led him to find the heart conditions "consistent with some degree of diminished functional pulmonary volume compatible with diminution due to extreme obesity." Dr. Miller's diagnosis was of (1) "marked exogenous obesity" and (2) "diminished pulmonary reserve probably due to exogenous obesity". It was noted that the apparent cardiac enlargement may have been due to the marked horizontal position of the heart "although there may be some slight enlargement," and Dr. Miller concluded: "Certainly if he would lose weight it would be greatly improved and I would expect him to be able to return to work." (Tr. 125–126.).

A report of Dr. J. W. Geiger, D.O., a specialist in ophthalmology and otolaryngology, dated April 24, 1964, noted a "chronic suppurative right otitis media and chronic maxillary sinusitis. Treatment for these conditions would benefit." (Tr. 136).

L. Virgil Miller, M.D., made two reports. The first report dated April 30, 1964, noted chronic maxillary sinusitis and ethmoiditis, moderate heart enlargement, peri-bronchial markings in the chest, and lungs clear to auscultation, palpation and percussion; reflexes were diminishing and both ankles were very edematous. The plaintiff complained of swelling of the hands and feet, shortness of breath, continuous headaches, "heart tingles", periods of dizziness and general malaise. The diagnoses and prognoses were as follows:

"DIAGNOSIS:

"It is my opinion that this patient presently suffers from:

1. Obesity.

2. Hypertension.

3. Albuminuria.

4. Edema of both ankles.

5. Moderate Valvular Heart disease.

"PROGNOSIS: Guarded.

"REMARKS: It is the opinion of this examiner that this patients (sic) condition is static and that no optimum improvement can be expected, and that the patient should avoid any strenuous activity." (Tr. 138)

Dr. Miller's second report of May 5, 1964, diagnosed plaintiff's condition as hypertension, dyspnea and obesity. This report stated that moderate improvement could be expected and that plaintiff should "avoid strenuous work". (Tr. 140).

George C. Roveti, M.D., evaluated the information contained in Dr. Wilson H. Miller's report of August 19, 1963. He noted that the heart enlargement was borderline, that blood pressure readings of 160/90 do not represent significant hypertension, that there was no edema or heart failure. From this he concluded that the only serious impairment was

"obesity and some associated diminution of the ventilatory capacity".

Meanwhile, on October 30, 1964, plaintiff had sought in this Court judicial review of the denial of his second disability claim. On May 25, 1965, Judge Duncan's order sustaining defendant's motion for summary judgment was entered. In the order it was noted that "disability" under Sections 416(i) (1) and 423(c) (2), Title 42 U.S.C., meant:

> "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death *or be of long-continued and indefinite duration * * *"* (emphasis added)

It also noted in the findings of defendant that any existent impairment could be remedied by eliminating plaintiff's obesity. Therefore, although plaintiff was presently deemed unable to perform substantial work, it was ruled by reason of departmental regulation 20 C.F.R. 404.1502(g) that the condition was remediable and therefore did not meet the applicable disability standard. That regulation reads:

> "An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity."

In that case note was taken of the testimony of plaintiff to the effect that he did not follow his prescribed diet regularly. (Tr. 40).

Plaintiff's third claim, upon which his present complaint is being adjudicated, was filed October 22, 1965, alleging heart and liver impairments from September 27, 1962, the same onset date as was alleged in the second application. On this application, the following additional medical evidence was considered:

Records of the Kansas City General Hospital reveal indications of a peptic ulcer on October 8, 1964. An admission note dated September 17, 1965, states that, although plaintiff claimed to have suffered a heart attack, a previous electrocardiogram was within norman limits, and that another one taken on that day registered no change therefrom. (Tr. 161). Physical examination showed obesity, alertness, no acute distress, slurred speech, not aphasic, blood pressure 170/104. The impression was of "transient cerebral ischemia," a condition in which a part of the body suffers from a lack of blood, usually because of a contraction of the blood vessels (Tr. 162). The chest x-ray again revealed the "borderline enlarged heart and mild pulmonary congestion." (Tr. 164). The diagnosis upon discharge September 23, 1965, was:

> "(1) occlusive cerebrovascular disease with transient ischemic episodes
>
> "(2) obesity
>
> "(3) diabetic glucose tolerance curve
>
> "(4) right atytus [sic] media, chronic
>
> "(5) duodenal ulcer? (sic) secondary to acid peptic disease" (Tr. 168)

The physician's record noted plaintiff claimed to have had three heart attacks (Tr. 169). Heart flutters were noted (Tr. 170). On October 11, 1965, N. B. Correll, M.D., noted "bilateral chronic sclerosing mastoiditis" (Tr. 171). The same physician noted some improvement in duodenal conditions on October 18, 1965 (Tr. 173), but a possible worsening with the presence of an ulcer on December 6, 1965 (Tr. 176).

Amin A. Faris, M.D., tendered a report dated August 19, 1966, covering the period of plaintiff's admission to General Hospital in September, 1965, and later visits to the outpatient clinic. He concluded plaintiff was currently suffering "cerebral arteriosclerosis with secondary cerebrovascular insufficiency." (Tr. 191–192).

In his letter to defendant of September 24, 1966, Selbert G. Chernoff, M.D., said that he examined plaintiff on Sep-

tember 2, 1966. History was reportedly difficult to elicit from him because of his speech trouble and low general intelligence.

"Physical examination revealed a blood pressure of 130/80 which fell to 120/80 standing. The pulse was regular at 72 beats per minute. A fairly brisk thirty-foot walk changed the pulse to 88 beats per minute. The heart was not clinically enlarged. No murmurs were heard. There was no clinical evidence of congestive failure. Neurological examination was not remarkable. Laboratory reports and hospital records were obtained from Kansas City General Hospital confirming the diagnosis of diabetes and cerebral arteriosclerosis.

"It is my opinion that Mr. Bethune is moderately disabled primarily on the basis of cerebral arteriosclerosis, for which no treatment is available. I believe that his condition will be slowly progressive."

A second letter to defendant of Dr. Chernoff is dated March 23, 1967. It reads:

"Mr. Bethune was recently hospitalized at St. Joseph Hospital approximately two weeks ago and was seen in consultation by a cardiologist, Dr. Keith Averill. This was done because of the possibility of a vascular deficiency in his left carotid system known as a subclavian steal syndrome. To determine if this was the case, a retrograde arteriogram was done. This did not demonstrate a carotid steal syndrome, but the internal carotid arteries which were visualized only faintly appeared to show a rather large plaque at the origin of the left internal carotid artery. There is no question in my mind that Mr. Bethune has a vascular obstruction somewhere in his central nervous system with resulting brain damage secondary to this. Furthermore, it is my opinion that he is likely to experience a second cerebral vascular accident with further damage."

Evidence taken at the hearing conducted on September 27, 1966, revealed that plaintiff had reduced his weight to 195 pounds (Tr. 56); his work experience had not changed (Tr. 59–67); he was still unable to read or write (Tr. 59); he claimed to have suffered three heart attacks (Tr. 67); he had had a stroke seven or eight months previously, since which he had been constipated (Tr. 68); and he had taken off 45 pounds (Tr. 69).

The Hearing Examiner's decision, which was the final decision of the defendant, read in part as follows:

"Since the issue in the current claim is identical to the issue with respect to severity of impairments under the pre-1965 Law decided by the prior Hearing Examiner's decision dated June 3, 1964, such decision is res judicata and final and binding on the claimant, insofar as severity of impairments is concerned, up to and including June 30, 1963, the date he last met the special earnings requirements (in the absence of new and material evidence warranting the reopening of the prior Hearing Examiner's decision). Therefore, the only issue for decision in the current case must be confined to application of the Law as it is revised by the 1965 Amendments to the Act. Specifically, the present issue before the Hearing Examiner is whether the claimant was 'disabled' on or before June 30, 1963, and such 'disability' could be expected to result in death, or has lasted for a continuous period of not less than twelve months, and has not terminated more than 14 months prior to the month of filing his latest application (October 22, 1965).

"In other words, in the absence of 'new and material evidence,' the only question for decision by the undersigned Hearing Examiner is whether the claimant has been unable to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which could be expected to result in death or has lasted for a continuous period of not less than 12 months, provided the claimant's applica-

**432**

tion presently under consideration, which was filed October 22, 1965, was in fact filed not more than 14 months subsequent to the month in which any such 'disability' terminated. Since the claimant last met the special earnings requirements on June 30, 1963, in order for the claimant to be entitled to benefits, it must be found by the undersigned Hearing Examiner that any 'period of disability' must have had its onset on or before that date.

"The issue before the Hearing Examiner is whether or not the claimant is entitled to the establishment of a period of disability and/or disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended. The determinative period to be considered by the Hearing Examiner is that period beginning with September 27, 1962, the alleged date of his inability to engage in any substantial gainful activity, and continuing through the date of final decision. The claimant met the special earnings requirements through June 30, 1963. The specific issue is whether at a time when the earnings requirements were met, the claimant was or is under a disability of the required severity and duration through the effective life of his application filed October 22, 1965. This issue must be decided under the applicable Social Security Law in effect both before and after the 1965 Amendments to the Social Security Act. If he is found to be under such a 'disability,' the date when it commenced and the duration thereof are also for determination and whether the special earnings requirements of the Act are met for the purpose of such entitlement.

\* \* \* \* \* \*

"A careful review of all the evidence of record observed prior to the Hearing Examiner's decision shows that as regards to the claimant's medical impairments, existing within the period during which he met the special earnings requirements, the additional reports do not constitute such 'new and material evidence' as would warrant the reopening of Hearing Examiner Anderson's decision

of June 3, 1964, wherein he found that the claimant did not have impairments of such severity as to preclude him from engaging in any substantial gainful activity at any time when he met the special earnings requirements of the Act, or which continued thereafter through the date of his application.

"The additional evidence obtained subsequent to the prior Hearing Examiner's decision is merely cumulative as to those conditions which existed prior to that decision. The additional conditions including diabetes, cerebrovascular disease and arteriosclerosis, cerebral, occurred or were diagnosed, or had their onset at a date considerably later than that on which the claimant last met the earnings requirements. Therefore, the prior Hearing Examiner's decision is res judicata and binding upon this Hearing Examiner, and the claimant's application filed October 22, 1965, must be dismissed insofar as it is a claim for benefits under the law prior to the 1965 Amendments of the Social Security Act. With respect to the only issue before the Hearing Examiner, that is, whether the claimant has been unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment or impairments which could be expected to result in death or which have lasted for a continuous period of not less than 12 months, providing such disabling impairments have not terminated more than 14 months prior to October 1965, the month in which the claimant filed his application, the Hearing Examiner is impelled by all the evidence to find in the negative. In the first place, since the prior Hearing Examiner's decision is binding upon the undersigned with respect to the proposition that the claimant's impairments were not severe enough at any time to prevent him from engaging in substantial gainful activity, it follows that the claimant's impairments were not of such severity beginning on or before June 30, 1963, as to prevent his engaging in substantial gainful activity for a continuous period of not less than

12 months. Since the 1965 Amendments also require that any disabilities, impairment or impairments (which must have had their onset on or before June 30, 1963) must not have terminated more than 14 months prior to the month of filing, any disability must have continued up to at least August 1964. The evidence clearly shows that the claimant's most severe disability at that time was obesity with some side or secondary symptomotology, and was not at that time producing significantly disabling symptoms. It may be conceded that the claimant's present galaxy of impairments may well be considered disabling, but they have arisen or become severe subsequent to the period in which he met the special earnings requirements.

"Even if the case were to be considered de novo, a close study of all the evidence presently or record does not establish that the claimant, even for a continuous period of not less than twelve months, was precluded from engaging in substantial gainful activity by reason of a medically determinable physical or mental impairment having its onset on or before June 30, 1963, and not terminating prior to August 1964."

### Standards on Review

■ The decision of the defendant is subject to judicial review upon seven principal considerations:

"(1) Were the hearing procedures fair and lawful? Jacobson v. Folsom (S.D.N.Y.) 158 F.Supp. 281, 284.

"(2) Was evidence received on the material factual issues? Fenix v. Celebrezze (W.D.Mo.) 243 F. Supp. 816.

"(3) Are the findings of fact supported by substantial evidence? Celebrezze v. Bolas (C.A.8) 316 F.2d 498, 500–501.

"(4) Are the findings of fact sufficient to resolve the crucial issues? Hayes v. Celebrezze (C. A.5) 311 F.2d 648, 654.

"(5) Were correct legal standards applied to the facts found in determining the ultimate issues? Ferran v. Flemming (C.A.5) 293 F.2d 568, 571.

"(6) Were all regulations of defendant applied in arriving at a decision lawful and valid as applied in this case? Marion v. Gardner (C.A.8) 359 F.2d 175.

"(7) In finding the facts does it appear that the claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence, the usual burden in administrative proceedings? Sec. 7(c) Administrative Procedure Act. Sec. 556(d), Title 5, U.S.C.; Jaffe, Administrative Law: Burden of Proof and Scope of Review, 79 Harvard Law Review 914; Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed. 2d 362 (1966)." See Pollard v. Gardner (W.D.Mo.) 267 F.Supp. 897, at 903.

■ It is plainly evident that the defendant has applied incorrect legal standards. In the first place, Judge Duncan's decision with respect to the severity of impairment is not, in its affirmance of the previous hearing examiner's decision of June 3, 1964, *res judicata,* either under the 1965 standards of disability or their precursors, "up to and including June 30, 1963," as defendant contends. Rather, it is *res judicata,* if at all, only to January 1, 1963,[1] and if new and material evidence can be adduced to indicate a substantial change in plaintiff's condition between then and June 30, 1963, the plaintiff may be found

---

I. Before the 1965 amendments, the Social Security Act at Section 416(i) (2), Title 42, U.S.C., required that disability be established within the three-month prospective life of a disability application. The application of plaintiff which resulted in the previous judicial decision of Judge Duncan was filed on October 1, 1962.

to have commenced a period of disability between those two dates. See Moore v. Celebrezze (E.D.Pa.) 252 F.Supp. 593, 594. Further, under the 1965 amendments the decision is not *res judicata*, after the effective date of the amendments,[2] as the defendant admits.

■ It is defendant's final position in its reply brief filed February 23, 1968, that the previous judicial decision has "impetus" to carry it beyond January 1, 1963, by virtue of the fact that it is *res judicata* with regard to the severity of plaintiff's impairment on that date. Thus, defendant argues, plaintiff's impairment did not constitute a medically-determinable physical or mental impairment within the meaning of the Act on that date, and absent evidence which shows a change between that time and June 30, 1963, that decision is still binding on the issue of severity of impairment. Judge Duncan's opinion, however, held that the severity of impairment met the pre-1965 criteria in that plaintiff was deemed currently unable to perform substantial gainful work. The only reason that benefits were not awarded by the court was that plaintiff's condition was then deemed remediable if plaintiff would lose weight. Therefore, by virtue of a regulation of defendant, which that court found applicable, the plaintiff could be found not disabled within the terms of the applicable statute.[3] While the court

recited that the medical testimony did not reveal any "serious organic disorder," it did note that plaintiff suffered from a shortness of breath and swelling of the ankles. No specific finding on the issue of the medical determinability of the impairment was made. The required severity, however, was determined to exist. Therefore, when plaintiff testified without contradiction at the hearing upon the application under review in this case that he had reduced his weight to 195 pounds and that his condition had not improved, but rather had worsened, and when that testimony was consistent with new medical evidence, the issue of whether plaintiff had a medical determinable physical impairment on or before June 30, 1963, which was the end of his eligibility under the pre-1965 law, became an issue on the present application.

■ The evidence which plaintiff presented to defendant on his prior application would have supported a finding that a medically determinable physical impairment existed which, as the court did find, then presently precluded plaintiff from substantial gainful activity. All the physicians who had examined and treated plaintiff in a period from June 18, 1958, to a time just prior to the administrative decision, had found plaintiff to suffer at least from an enlarged heart, [4] if not from more severe impairments. Medical authorities are general-

2. This is admitted by defendant at page 2, and elsewhere, in its reply to plaintiff's brief, which reply was filed on February 23, 1968. Defendant contends, however, that Judge Duncan's opinion is binding on its finding that, as defendant argues, the severity of plaintiff's ailment could not constitute a medically determinable impairment within the terms of the Social Security Act.

3. That regulation, noted hereinabove, was a departmental regulation of the Department of Health, Education, and Welfare, found at 20 CFR 404.1502(g) which read as follows:

"An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevent-

ed by the impairment from engaging in any substantial gainful activity."

4. Report of General Hospital No. 1, dated June 18, 1958: "grossly enlarged heart"; medical report of W. T. Reeves, D.O., rendered July 16, 1963: "congestive heart failure"; Dr. Reeves' report dated February 13, 1963: "congestive heart", with a history of heart ailments dating back to 1954; Wilson H. Miller, M.D., August 19, 1963: "border-line cardiac enlargement"; L. Virgil Miller, M.D., April 30, 1964: moderate heart enlargement and "moderate valvular heart disease." Only J. W. Geiger, D.O., who was a specialist and presumably did not therefore concern himself with the heart, did not report any heart enlargement or other heart ailment.

ly in agreement that enlargement of the heart constitutes a medically determinable physical impairment. See, e. g. Dorland, The American Illustrated Medical Dictionary (22d ed. 1951) which at page 261 defines enlarged heart (cardiomegaly) as "cardiac hypertrophy." See also Stedman's Medical Dictionary (20th ed. 1961) where at page 709 "hypertrophy" is defined as *"morbid* enlargement or overgrowth of an organ or part due to an increase of its constituent cells." (Emphasis added.) "Morbid", in turn, is defined as "Pertaining to or affected with disease, diseased." *Id.* at 937. See also the Putnam Medical Dictionary (1961), p. 419. "Hypertrophy" is "an *abnormal* increase in size of an organ or part due to enlargement or multiplication of its constituent parts". Cardiac hypertrophy can take the form of a "compensatory heart" which follows the "impairment or destruction of a paired organ or another part of the same organ." *Id.* at 324. In addition, it had previously been judicially determined that the condition prevented plaintiff from engaging in substantial gainful activity.

 In this context, evidence adduced by plaintiff at the later hearing before defendant that (1) he had reduced his weight to 195 pounds, and that (2) he was still suffering from an enlarged heart as well as other assorted ailments, and (3) that he was still unable to work, and (4) that he had had three recent heart attacks and a stroke, was new and material evidence to justify reopening the case under defendant's regulation 20 CFR 404.957, 404.958. Furthermore, it was evidence, which when considered in combination with the evidence adduced upon prior applications and Judge Duncan's finding that, as of January 1, 1963, plaintiff was unable to undertake substantial work, constituted a new basis for a new claim. Therefore, the doctrine *res judicata* is inapplicable here. But the finding of Judge Duncan that, as of January 1, 1963, plaintiff suffered a disability severe enough to preclude his engaging in substantial gainful activity, is of persuasive weight in the present action because of the finding that on January 1, 1963, plaintiff was unable to work. So also, however, are the new facts pointing directly to the conclusion that plaintiff was still unable to work thereafter even though losing weight in accordance with the defendant's regulation on remediability. *Res judicata* "does not apply where there are new facts which did not exist at the time of the prior judgment". Weatherred v. Secretary of Health, Education and Welfare (E.D.Okla.) 275 F.Supp. 69; Johnson v. Fleming (C.A. 10) 264 F.2d 322. Defendant thus applied its own regulation invalidly in refusing to reopen the case and in considering the evidence offered in this application only cumulative to that previously adduced.[5] Defendant re-

---

5. The invalidly applied regulation, Section 404.937 of Regulations No. 4, of the Social Security Administration, 20 CFR 404.937, reads in pertinent part:

"The hearing examiner may, on his own motion, dismiss a hearing request, either entirely or as to any stated issue, under any of the following circumstances:

"(a) *Res judicata*. Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the same issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure timely to request reconsideration, hearing, or review, or to com-

mence a civil action with respect to such determination or decision * * *."

The misapplication of that rule lead to misapplication of Sections 404.957 and 404.958. Section 404.957, in pertinent part, reads as follows:

"An initial or reconsidered determination of the Administration or a decision of a hearing examiner or of the Appeals Council which is otherwise final under § 404.908, § 404.916, § 404.940, or § 404.951, may be reopened:

"(a) Within 12 months from the date of the notice of the initial determination (see § 404.907), to the party to such determination, or

lies on the cases of James v. Gardner (C.A. 4) 384 F.2d 784, and Moore v. Celebrezze (S.D.Cal.) 252 F.Supp. 593, as supporting his contention that the former judicial decision was *res judicata* upon both the issues of severity of impairment and remediability of impairment. Neither of those cases, however, deals with remediability.[6] Each of them holds that when the severity of plaintiff's impairments is shown by the "new and material evidence" to be substantially the same as it was when litigated, the judicial decision is *res judicata*. But the rule enunciated by those cases that new and material evidence avoids *res judicata* is applicable here, because continued severity equal to that at the judicial decision of May 25, 1965, would show conclusively that the impairment was not only medically determinable, but also that it could be expected to be of "long-continued or indefinite duration" to come within the requirements of the Social Security Act prior to the 1965 amendments. Judge Duncan found that as of December 31, 1963, plaintiff was not capable of performing substantial gainful activity. When, as the evidence in the last hearing of June 3, 1964, shows, no change subsequently ensued in spite of plaintiff's reducing his weight, the conclusion that plaintiff is and has been throughout the time period of this series of decisions disabled and thereby incapable of substantial gainful activity is compelling, unless there appears substantial evidence to the contrary in the record now under review. The prevailing rule under the Social Security Act is that once a claimant produces evidence of a medically determinable physical impairment of long-continued or indefinite

duration which renders him unable to perform his prior work, the burden shifts to the defendant to adduce evidence of job availability suitable to plaintiff's age, work experience, educational background and capacity. Corbin v. Ribicoff (W.D.S.C.) 204 F.Supp. 65; Nelson v. Gardner (C.A. 6) 386 F.2d 92; Carico v. Gardner (C.A. 4) 377 F.2d 259. This the defendant failed to do. No vocational expert testified regarding the availability of jobs suitable for plaintiff. The defendant attempted in its findings of fact to justify this omission by the following reasoning:

> "[S]ince the prior Hearing Examiner's decision is binding upon the undersigned with respect to the proposition that the claimant's impairments were not severe enough at any time to prevent him from engaging in substantial gainful activity, it follows that the claimant's impairments were not of such severity beginning on or before June 30, 1963, as to prevent his engaging in substantial gainful activity for a continuous period of not less than 12 months." (Tr. 14)

It was not the finding of the prior hearing examiner which should have been considered by the Secretary, however, but that of Judge Duncan, whose specific finding was:

> "The evidence clearly reveals that in his present physical condition, plaintiff is unable to perform any substantial gainful work * * * We believe that the evidence clearly showed at the time of the hearing that the plaintiff was not able to engage in any substantial gainful activity." (Tr. 213–215)

"(b) After such 12-month period, but within 4 years after the date of the notice of the initial determination (see § 404.907) to the party to such determination, upon a finding of good cause for reopening such determination or decision, * * *"

Section 404.958 pertinently reads:
" 'Good cause' shall be deemed to exist where:

"(a) New and material evidence is furnished after notice to the party to the initial determination * * *"

6. Further, each of these cases enunciates the rule that the issue of severity is *res judicata* only in the absence of new and material evidence which could prove the contrary of the previous holding.

■ It was, further, the conclusion of the prior hearing examiner that:

"It is not the intention of the Hearing Examiner to infer that the claimant has the physical capacity for doing work of such strenuous nature as he was doing at the time he suffered the onset of his impairment, in fact he definitely may not; nor, for that matter would it appear advisable that he attempt moderately heavy labor, considering the nature of his impairment. On the other hand, these facts as above related and the medical findings do show, and the Hearing Examiner finds, a physical ability to do light and sedentary types of work * * *" (Tr. 200–201)

The tacit conclusion, however, that plaintiff was capable of substantial gainful activity is supported by no evidence of record. No vocational expert testified in this hearing, either, that there were "light and sedentary types of work" suitable to plaintiff's condition available in the national economy. No testimony was offered that work suitable to plaintiff's level of disability was anywhere available.[7] On the other hand was plaintiff's uncontroverted testimony that his physical condition had forced him to quit work and that subsequent efforts to obtain rehabilitation or employment had been unavailing. Where the claimant proves himself unable to perform at his former employment, the burden is on defendant to prove his ability to perform substantially and gainfully in other types of employment. Kozik v. Celebrezze (N.D.Ohio) 228 F.Supp. 381; Carico v. Gardner, *supra*; Lane v. Gardner (C.A. 6) 374 F.2d 612; Hamilton v. Gardner (S.D.W.Va.) 265 F.Supp. 640.

That burden was not sustained here. Thus the finding by the prior hearing examiner that plaintiff was capable of substantial gainful activity was not sup-

ported by substantial evidence and the Secretary's reliance upon that finding in his decision under review is affected by the same lack of basis and does not satisfactorily answer indicating the 4th question set out above that findings of fact should be supported by substantial evidence. When, further, plaintiff testified at the later hearing that he still could not work and was unable to find work which he was capable of doing, and that evidence was uncontroverted, a finding by this Court that plaintiff was, and is, incapable of sustaining substantial gainful employment is justified.

■ The cause should not be remanded to defendant to receive evidence on job availability or to reconsider the evidence in the light of the legal principles enunciated here. Where there has been ample opportunity to take evidence upon an issue necessary to a determination of the case, no remand is necessary. Flemming v. Rhoades (C.A. 5) 276 F.2d 788; Hupp v. Celebrezze (N.D.Iowa) 220 F.Supp. 463. The disability here had been previously determined judicially to be serious enough to constitute disability within the terms of the Act, except that it was deemed remediable. Upon a new application the evidence conclusively showed that the severity persisted in spite of plaintiff's taking the advised remedial measure by losing weight. Therefore the defendant herein was by those facts adequately put on notice that evidence in respect to suitable available employment must be produced if the relief was not granted. Furthermore, remand to reconsider the evidence is neither appropriate nor justified where no substantial evidence supports the secretary's decision and where, in addition, plaintiff has had to prove his case under standards unsatisfactorily answering the 3rd and 7th questions set out above. See Baker v. Gardner (C.A. 3) 362 F.2d 864. See also Kozik v. Celebrezze, *supra*, to the effect that omission

7. While the 1967 amendments relieve defendant of the burden of showing available employment suitable to plaintiff's level of ability in the particular locality, it is still incumbent upon defendant to make some showing of availability in the national economy. See Section 423(d)(2), Title 42, U.S.C.

of evidence regarding job availability alone justifies reversal without remand. As pointed out above, all the medical evidence adduced upon prior applications showed that plaintiff suffered at least from an enlarged heart. The only exception was the examination by a specialist who examined him for purposes of other than finding a heart ailment.[8] Plaintiff's age and low mentality contribute to his disability.[9] Drs. W. T. Reeves, D.O., and L. Virgil Miller, M.D., recommended that plaintiff would have to lose weight in order to be able to return to work. Only one physician found no impairment and that was George C. Roveti, M.D., who did not himself examine the plaintiff, but rather only evaluated the information in Dr. Wilson H. Miller's report of examination. In the context of this record such evidence cannot be deemed "substantial" evidence. See Mefford v. Gardner (C.A. 5) 383 F.2d 748; Cohen v. Perales (C.A. 5) 412 F.2d 44 (decided May 1, 1969).

Further, medical evidence, uncontroverted of record, adduced upon this application showed that plaintiff's condition had not improved and, in fact, that symptoms had worsened. While one examiner found plaintiff not to have a clinically enlarged heart, that same examiner found him to be "moderately disabled" by reason of cerebral arteriosclerosis "for which no treatment is available" and thus the prognosis was "slowly progressive" deterioration.[10] Other examinations revealed the enlarged heart, pulmonary congestion, occlusive cerebrovascular disease with ischemia, and the development and worsening of a gastric ulcer. Plaintiff further testified, without

by the time of the hearing on September 27, 1966 (though many of the reports still characterize him as "obese") and that he still suffered from the same impairments and symptoms as revealed by the several examinations. In summation, the picture of a drastic complex of ailments is thus controverted only by the insubstantial opinion of Dr. Roveti that plaintiff was not suffering from an impairment on August 19, 1963, and Dr. L. Virgil Miller's conclusion that he would not be suffering from such if he would lose weight. Expert opinion with regard to disability "which is not seriously controverted by substantial evidence to the contrary supplies the federal district court with a proper ground, *inter alia*, for reversal". Cunningham v. Celebrezze (W.D.N.C.) 214 F.Supp. 619; cf. Hilber v. Ribicoff (D. Mont.) 196 F.Supp. 460, which also holds that evidence of examinations and treatment of claimant after the date on which he last met coverage requirements is relevant to show long continued and indefinite duration of his impairment, for the purposes of establishing a period of disability. See also Park v. Celebrezze (W.D.Ark.) 214 F.Supp. 153, 162. "The findings of the hearing examiner are not supported by substantial evidence when he relies on isolated remarks in one or two of the medical reports before him." Cf. Corn v. Flemming (S.D. Fla.) 184 F.Supp. 490.

It is noted that plaintiff is entitled to relief under the 1965 amendments.[11] It is further concluded that plaintiff met the requirements under the pre-1965 ap-

---

8. See note 4, *supra.*

9. Age and mentality are among the factors to be taken into consideration in determining the suitability for employment. See, e. g. Ditlow v. Celebrezze (D.Md.) 214 F.Supp. 532; Prestigiacomo v. Celebrezze (E.D.La.) 234 F.Supp. 999; Patton v. Celebrezze, (D.Del.1964) 227 F. Supp. 441; Corbin v. Ribicoff, *supra.*

10. See summary of reports of Selbert G. Chernoff, M.D. *supra.*

11. Benefits would not be payable to him under the 1965 amendments, however, for months prior to September 1965. See Section 303(f) (1) of P.L. 89–97, which provides that no monthly insurance benefits shall be payable by reason of the 1965 amendments before the second month following the month of enactment of P.L. 89–97 (July 1965).

plicable law as of January 1, 1963. It is therefore

Ordered that defendant's motion for summary judgment be, and the same is hereby, denied. It is further

Ordered and adjudged that the decision of defendant denying disability benefits to plaintiff be, and it is hereby, reversed and defendant is directed to award plaintiff benefits for the months beginning with July 1, 1963, the first day after the termination of the six-month waiting period which began January 1, 1963.